THE STATE v. JOHN RINEHART et al.

*Fornication and Adultery—Evidence.*

1. Where the offence charged in the indictment is a *joint* one—as fornication and adultery—if one of the parties, on the joint trial, be acquitted, or if one has been previously acquitted on a separate trial, there can be no conviction of the other.

2. While the admissions or confessions of one defendant in an indictment for fornication and adultery are competent against the person so making them, they are not to be received against the co-defendant; but, on a joint trial, it is not error to admit evidence of such confessions, where the jury is instructed that they can only be considered in determining the guilt of the person making them.

3. Where there was evidence tending to show that the *feme* defendant resided on the land of the male defendant, and in a house erected by him for her; that he was married and she was single; that they were frequently seen together under suspicious circumstances; that while living on his land she gave birth to a bastard child. and that he became her bail upon an indictment for fornication and adultery with him: *Held*, there was sufficient evidence, if believed, to justify a verdict of guilty.

INDICTMENT for fornication and adultery, tried before *Gilmer, J.*, at Spring Term, 1889, of the Superior Court of MADISON County.

It was in evidence that Rinehart is a married man, and the defendant Lindsay is a single woman; that the female defendant has a bastard child about two years old; that she now lives and has lived at the defendant Rinehart's house and on his land since before the child was born; that she now lives on the land of Rinehart, in a house built by him for her, and into which she moved soon after it was built; that Rinehart has been seen at the house in which she lives, and she has been seen at his house on different occasions.

A witness testified that he had had a conversation with the defendant Rinehart, in which he asked witness "if he thought Mary Lindsay's child favored him" (Rinehart), and, in conversation, Rinehart told witness that he (Rinehart) "had tried as hard as any man to get the child, and he guessed that he was its father." Witness also testified that Rinehart told him "that, on one occasion, Mrs. Rinehart (his wife) caught the defendants in the act of adultery, and that it was all he could do to keep his wife off of Mary Lindsay."

These conversations were objected to as evidence against the defendant Lindsay, and the "Court held that the said conversations were evidence only against the defendant Rinehart, and that the jury could not consider the same as any evidence whatever against Mary Lindsay."

It was also in evidence that the defendant Rinehart kept a store, and the defendant Lindsay had been seen at the store in secret conversation; that they had been seen together at the house of her father, and they went off together in the direction of the house in which she lived. It was also in evidence that a few months before the trial she had a child, and when the officer went to execute a *capias* upon her, the defendant Rinehart was there and went on her bond for her appearance at Court.

It was also in evidence that they had been seen going about together, and on one occasion they were seen seated on a log, near the woods, on the male defendant's land, not far from where the female defendant lived.

His Honor was asked to instruct the jury that there was no evidence against the female defendant, and, as to · her, they must return a verdict of not guilty; and that as there was no evidence as to her, they should return a verdict of not guilty as to both defendants.

This was refused. There was no exception to the charge as given. There was a verdict of guilty; judgment and appeal.

*The Attorney General* and *H A. Gudger*, for the State.
No counsel· *contra*.

DAVIS, J.—after stating the facts: When two persons are tried jointly for the commission of an offence that requires the joint act of the two to commit, and one of them is acquitted, there cannot be a verdict of guilty as to the other.

The defendants are charged with fornication and adultery, and, as the offence charged is a joint one, if one of the parties in the joint trial be acquitted, or if one of them has been previously acquitted on a separate trial, it operates as an acquittal of the other, and there can be no judgment as to either. *State* v. *Mainor*, 6 Ired., 340; *State* v. *Parham*, 5 Jones, 416.

This has been the ruling in North Carolina, though the doctrine held by· us has been fully reviewed in Texas where it is repudiated, and it is held that the acquittal of one does not *per se* operate as an acquittal of the other. *Alonzo* v. *State*, 15 Texas App., 378. The same has been held by the Supreme Court of Tennessee. *State* v. *Coldwell*, 8 Baxter, 576.

It may well be doubted whether, when one of the parties has confessed and admitted guilt, or there is competent evidence to convict as to one and not the other, it would not be more in accord with reason to permit the jury to render a verdict of guilty as to the one admitted or proved to be guilty and return a verdict of not guilty, because not proved as to the other, than to require them to say not guilty as to both, contrary to the admitted or clearly proven facts. Under such a rule no innocent person would ever be punished, and no injustice could be done, unless it be an injustice to convict and punish the guilty. While it is well settled that the admissions, or confessions, of one defendant are competent as evidence against the party making the admissions, or confessions, it is equally well settled, both by judicial decision and by statute (*The Code*, § 1041), that such admissions, or confessions, "shall not be received in evidence against the other."

If, therefore, in the case before us, the declarations of the male defendant, which are competent only against him, and which his Honor properly instructed the jury not to consider as any evidence whatever against Mary Lindsay, have such weight as to facts and circumstances which, by themselves would not amount to evidence reasonably sufficient to go to the jury, it would have been the duty of the Court to direct a verdict of not guilty as to Mary Lindsay, and there could have been no judgment against either.

But we think there was evidence against Mary Lindsay, other than the declarations of the defendant Rinehart, sufficient to go to the jury as to her. From the very nature of the offence, it is usually proved by circumstances—rarely by positive and direct evidence of the adulterous acts. It is not necessary that the defendants should have been seen bedding and cohabiting together.

If facts and circumstances are proved from which the jury may infer, beyond a reasonable doubt, that Mary Lindsay voluntarily and habitually submitted her person to the em-

braces of the male defendant, it will be sufficient, and we think facts and circumstances, independent of Rinehart's declarations, sufficiently appear to warrant the conviction of both. *State* v. *Eliason,* 91 N. C, 564, and cases cited.

The equivocal situations in which they were seen together; the fact that he built a house for her on his land; that he visited her there; that they went about together; that a bastard child was born; that he gave bond for her, are all circumstances to go to the jury reasonably pointing to the guilt of the parties. They are sufficient to create more than a mere suspicion; they cannot be viewed as consistent with the innocence of the parties, and in all these she furnished her full share, and the fact that she had the child, which, by itself, would have been no evidence against Rinehart, would, perhaps, fully offset his declarations in the aggregate weight of evidence.

If it be said that the declarations of Rinehart, notwithstanding the charge of his Honor, would, of necessity, operate upon the minds of the jury to the prejudice of his co-defendant, the answer is two-fold: first, it is to be presumed that the jury will follow the instructions of the Court, and not consider the declarations as any evidence whatever as against her; and second, if it be impossible for the jury to look at competent evidence as against Rinehart, without also seeing evidence of her guilt, it is due to the unfortunate situation in which she has placed herself, for which she is responsible, and no injustice is done of which she can complain. If it appear that her co-defendant was in any way antagonistic to her, or that he was base enough to make false declarations to her prejudice, or for any reasonable cause, the Court, in its sound discretion, might have allowed a severance in the trial, but this was not asked for, and they entered upon the trial in the same boat, and, so far from its being lightened by her virtues, she seems to have furnished her full share of weight in sinking it.

Affirmed.