## STATE v. ALFRED DAVENPORT.

(Filed 28 February, 1945.)

**1. Fornication and Adultery § 3: Criminal Law § 32a—**

The guilt of defendants or of a defendant, in a criminal prosecution for fornication and adultery, must be established in almost every case by circumstantial evidence. It is never essential to conviction that a single act of intercourse be shown by direct testimony.

**2. Same—**

On a prosecution upon indictment charging fornication and adultery, where the State's evidence tended to show that defendants were constantly together, day and night, on the streets and in several different homes maintained by the male defendant, and that they were arrested late at night in one of these homes, no other person being in the house at the time, both defendants coming out of the same bedroom, there was sufficient evidence to support a conviction and motion for nonsuit was properly denied.

**3. Fornication and Adultery § 4—**

Upon trial in the Superior Court, after appeal by the male defendant only from a conviction of fornication and adultery in the Recorder's Court, a charge that, if the jury find from the evidence, beyond a reasonable doubt, that this defendant, not being married to the woman, did lewdly and lasciviously bed and cohabit with her and violated the statute, they should bring in a verdict of guilty, and if they should fail to so find, they should bring in a verdict of not guilty, substantially complies with G. S., 1-180, in the absence of request for further instructions.

**4. Fornication and Adultery §§ 1, 4—**

Where the male defendant only appealed from a verdict of guilty, on prosecution in Recorder's Court for fornication and adultery, an exception to the court's charge, which referred to the male defendant, singly, as the person on trial, is without merit. The prosecution is not one in which both defendants must be convicted of mutual intent to violate the law before conviction of one of them can be sustained.

APPEAL by defendant from *Dixon, Special Judge,* at October Term, 1944, of TYRRELL. No error.

The defendant Davenport, with Lois Wright, was tried in the Recorder's Court of Tyrrell County upon a charge of fornication and adultery, and both were convicted. Both defendants appealed to the Superior Court, but the defendant Lois Wright did not prosecute her appeal in that court. Upon the hearing in the Superior Court, Alfred Davenport was again convicted, and from the judgment of the court therein, appealed to this Court. The evidence upon the trial in the Superior Court

pertinent to an understanding of the exceptions taken at that time and considered here may be summarized as follows:

Sheriff Cohoon, of Tyrrell County, went to the home of the defendant around 12:00 o'clock at night, accompanied by the Chief of Police, and found the defendant at home with Lois Wright. The witness had known Lois Wright for several years, and stated that she was living in Washington County, just over the line, with Alfred Davenport. Prior to that time she was in Tyrrell County, living on property in which she had an interest, but not at the time living with the defendant. Witness saw them both in the same house on various occasions; and when the defendant brought Lois up to Columbia, "anybody could see her." Witness had seen her there both in daytime and nighttime, and they were together the night they were arrested.

Witness had seen her there late at night—in riding by there between 7:00 and 9:00 o'clock. Davenport has grown children. It was the understanding of witness that he had a divorce from his former wife. The defendant has two or three homes; maintains a home in Alligator; maintains one "here" and has other places where this woman stays. The last time witness saw her in Davenport's house in Columbia, where she was arrested, was two or three days after she was arrested and given time to get out of the county.

At her trial in the Recorder's Court, the Judge of that court gave her three to five days to leave the county or go to jail for six months, and she stayed right at the time with the defendant, and witness knew that defendant took her away. She was carried to defendant's house in Washington County, just over the Tyrrell County line.

The defendant did not keep anyone else in the house with him except a little boy.

Witness had the place covered for some time before he went in there and under observation.

Chief of Police Poston testified that he went with the Sheriff on the night of the 6th, and found Lois Wright and Alfred Davenport. They had the house under observation from sundown until they went in; were there five minutes before they made an alarm or made their presence known. Witness knew Lois Wright. She had been staying there some two or three weeks at Davenport's home in Columbia, and prior to that time she was staying across the road from Davenport's farm in Alligator. He saw her at his home frequently at that time, and there was no other person living there with him; saw her both in daylight and nighttime. On complaint from the neighbors as to what was going on, witness made several visits to see for himself, and talked with Alfred Davenport and the Sheriff concerning the complaints about him prior to the arrest. "He admitted it," and said that he had been advised that he had a per-

fect right to keep Lois there. Witness said he had seen them together since then on the streets of Columbia in his car—in Davenport's car—two or three days after the Recorder's Court trial. Davenport was a married man. At the time of his arrest Davenport and his wife were not living together.

The witness stated that they went to Davenport's place the night of the arrest about 12:00 o'clock. There was no other person there but Davenport and Lois. Witness saw them when they left from up the street, when they went in the house. He was standing on the street watching the car when they went into the house after the picture show. They went in the front door, and witness saw no one else go in there.

At the time of the arrest, Davenport and Lois came from the same room upstairs. "I was standing at the corner of the house listening, at the corner where he was sleeping. I could hear her in the dark, feeling for her clothes, and Alfred got up and put on his pants and came downstairs, and while he was talking to the Sheriff she came down from the same room. Heard her dropping things in the dark like anyone would do. She dropped a dress, clothes rack and things. Stood outside downstairs and heard a woman drop a dress upstairs."

Upon the conclusion of this evidence, the defendant moved for judgment as of nonsuit, and the motion was denied. Defendant excepted to the denial of his motion and offered no evidence.

*Inter alia,* the Judge instructed the jury as follows: "Now, I charge you that if you find from the evidence, beyond a reasonable doubt, that this defendant violated the statute upon which he is being tried, that is, that not being married to the woman, and that he did lewdly and lasciviously bed and cohabit with her, if you find that he violated that statute, and you must find this beyond a reasonable doubt, then it will be your duty to bring in a verdict of guilty against this defendant, but if you fail to so find, then it will be your duty to bring in a verdict of not guilty, or, if upon a fair and impartial consideration of all the facts and circumstances in this case, if you have a reasonable doubt as to his guilt of this charge, then it will be your duty to give him the benefit of that doubt and acquit him." To this instruction the defendant excepted.

The jury returned a verdict of guilty, and the defendant moved to set aside the verdict for errors of law committed in the course of the trial. The motion was denied, and defendant excepted. From the judgment entered upon the verdict, the defendant appealed, assigning error.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes and Moody for the State.*

*J. C. Meekins and W. L. Whitley for defendant, appellant.*

SEAWELL, J. The appeal poses two questions for our decision: First. Was there any evidence to support the conviction? Second, Did the trial judge in his charge satisfy the requirements of G. S., 1-180, in explaining the law and applying it to the evidence?

1. It is perhaps true that upon this particular subject the weight and persuasiveness of the evidence will appear differently to different minds. "Many men of many minds," says the old copy book. With this phenomenon we obviously have nothing to do; it is ours only to decide whether there is evidence tending to show defendant's guilt of the offense charged, and it is the province of the jury to pass upon its weight and sufficiency. In the numerous writings and judicial opinions upon the sufficiency of evidence in cases like this, one consideration stands out clearly; the guilt of the defendants or the defendant must be established in almost every case, if at all, by circumstantial evidence. It is never essential to conviction that even a single act of illicit sexual intercourse be proven by direct testimony. While necessary to a conviction that such acts must have occurred, it is, nevertheless, competent to infer them from the circumstances presented in the evidence. Some sense of natural shame, coupled with a fear of public condemnation or, more likely, the fear of the law, drives offenses of this nature into secret places, and usually causes those who commit them to observe the outward forms of decency.

We must not forget that jurors are selected from the body of the people because their experiences and observations in the affairs of life have taught them to make reasonable inferences from the testimony and evidence laid before them, and to judge of the probative force of one fact or aggregation of supporting facts in establishing the things sought to be proved, more especially when dealing with matters within the common experience. The evidence which they were called upon to consider in this case might fairly, in the language of *Lord Stowell* in *Loveden v. Loveden, infra,* "lead the guarded discretion of a reasonable and just man to the conclusion" of defendant's guilt. Measured by former standards of this Court, it tended to show a violation of the statute under which Davenport was indicted, and will not be disturbed. *S. v. Rhinehart,* 106 N. C., 787, 11 S. E., 512; *S. v. Mann,* 219 N. C., 212, 13 S. E. (2d), 247; *S. v. Rountree,* 181 N. C., 535, 106 S. E., 669; *S. v. Poteet,* 30 N. C., 23; *S. v. Eliason,* 91 N. C., 564; *Burroughs v. Burroughs,* 160 N. C., 515, 76 S. E., 478; *Loveden v. Loveden,* 4 Eng. Ecc. R., 461; 1 Am. Jur., sec. 62, p. 705; Underhill, Criminal Evidence, sec. 639.

2. The law is not always to be regarded as a cabalistic utterance, whose inner meaning only the initiate may understand and the professional expert interpret. Not infrequently, especially in respect to the statute law, the language used is so simple, comprehensive and self-

definitive that the trial court could find no words more appropriate than those used in the statute in which to couch an explanation. The Court finds itself compelled, after searching through synonyms and substitute phrases, to return to the well considered words of the law as containing the more enlightening expression. *S. v. Morgan,* 133 N. C., 743, 745, 45 S. E., 1033; *S. v. Webster,* 218 N. C., 692, 696, 697, 12 S. E. (2d), 272; *S. v. Puckett,* 211 N. C., 66, 74, 75, 189 S. E., 183. See *S. v. Gore,* 207 N. C., 618, 178 S. E., 209; *S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625.

"Lewdly and lasciviously cohabit" plainly implies habitual intercourse, in the manner of husband and wife, and together with the fact of not being married to each other, constitutes the offense, and in plain words draws the distinction between single or non-habitual intercourse and the offense the statute means to denounce.

In many instances, of course, the law cannot be regarded as self-explanatory in all particulars, and judicial interpretation becomes a requirement of the law. G. S., 1-180. What situations demand an explanation of the law through proper instruction to the jury without special prayer, and what explanations may be regarded as matters of subordinate elaboration, must be referred to the history of the subject as developed in our Reports, rather than to any fixed rule. New situations must be dealt with as they arise. We can only say here that the statute itself employs simple and understandable terms which directly define the offense, and we think the instruction was comprehensible. If the explanation given by the Court in these simple terms was not thought to be sufficient, it became the privilege of defense counsel to ask for further instructions. We regard the exception as untenable.

The further objection to the matter bracketed in the exception to the charge, that is, that the trial court referred to the defendant Davenport as, singly, the person on trial, is not meritorious. The record shows that Lois Wright did not prosecute her appeal in the Superior Court, and Davenport, therefore, alone was on trial. Nor is this a case in which both defendants must be convicted of mutual intent to violate the law before conviction of one of them can be sustained. *S. v. Cutshall,* 109 N. C., 764, 14 S. E., 107; *S. v. McDuffie,* 107 N. C., 885, 12 S. E., 83.

For these reasons, we find that there was, in the course of the trial,

No error.