STATE *v.* DAVIS.

---

STATE v. LONNIE V. DAVIS.

(Filed 3 November, 1948.)

**1. Fornication and Adultery § 3—**

In a prosecution for fornication and adultery the person jointly charged, but who is no longer on trial, is competent to testify against defendant as to the acts constituting the basis of the prosecution, since the proviso of G. S. 14-184 that the admissions or confessions of one shall not be received in evidence against the other relates to extra-judicial declarations and does not purport to render the person incompetent as a witness.

**2. Criminal Law § 41a (1)—**

The trend of the development of the rules of evidence has been to open the avenues to legal proof and to remove personal disqualification to testify, and testimony should not be barred except in the interest of a clearly defined public policy or unless clearly prohibited by statute. G.S. 8-49.

**3. Fornication and Adultery § 3: Criminal Law § 42d—**

Where, in a prosecution for fornication and adultery, the person jointly charged has testified as to the acts forming the basis of the prosecution, testimony that she had made substantially the same statements to another upon the investigation is competent for the purpose of corroboration.

**4. Fornication and Adultery § 3: Criminal Law § 34a—**

In a prosecution for fornication and adultery, testimony of an admission made by defendant that "he was guilty" of another charge based upon sexual relations with the other party, is competent as an admission of acts which with other similar acts tend to prove the offense of fornication and adultery.

**5. Fornication and Adultery § 3: Criminal Law § 29b—**

Defendant was charged with fornication and adultery with one of the orphanage girls under his supervision. *Held:* Testimony of another orphanage girl that defendant made improper advances to her is competent for the purpose of showing attitude, animus and purpose of defendant, and as corroborative of the State's case.

**6. Criminal Law § 81c (2)—**

Exceptions to portions of the charge will not be sustained when the charge construed contextually is free from prejudicial error.

**7. Fornication and Adultery § 5—**

In a prosecution for fornication and adultery, an instruction that if the jury found beyond a reasonable doubt that defendant and his alleged

paramour, not being married to each other, engaged in sexual intercourse with each other, with such frequency during the period to which the testimony related, that these illicit relations were habitual, they should return a verdict of guilty, *is held* without error.

### 8. Criminal Law § 81b—

The burden is on defendant to show error which materially and prejudicially affects his rights and but for which a different result probably would have ensued.

### 9. Fornication and Adultery § 4—

Evidence of defendant's guilt of fornication and adultery held sufficient to be submitted to the jury and overrule defendant's motion for nonsuit.

STACY, C. J., dissenting.

WINBORNE and DENNY, JJ., concur in dissent.

APPEAL by defendant from *Frizzelle, J.,* June Term, 1948, of HARNETT. No error.

The defendant Davis and Lola Mae Reeves were indicted for fornication and adultery under the statute G.S. 14-184. Lola Mae Reeves tendered plea of *nolo contendere* which was accepted by the State. Defendant Davis pleaded not guilty and was put to trial before the jury.

Lola Mae Reeves testified for the State, over objection of the defendant, that while she was living in the Free Will Baptist Orphanage at Dunn, of which defendant Davis was superintendent, and occupying a room near the bedroom of the defendant, she had sexual relations with him as many as six times during a period of three months, beginning March 1, 1947. Defendant used contraceptives. At that time she was fourteen years of age. Without objection she testified she had never had sexual intercourse with any person other than defendant.

The State offered, over objection, the testimony of the matron, Miss Wooten, that Lola Mae Reeves told her when questioned that she had had intercourse with defendant six times. This was admitted only for purpose of corroborating Lola Mae Reeves.

Martha Raines, another girl in the orphnaage, aged fifteen years, testified she was asked by defendant to come to his bedroom at night, and that she refused. Over objection she testified also he came to her room and got in bed with her, and she resisted his advances.

C. A. Jackson, Chairman Board of Trustees of the Orphanage, testified that the defendant, in a conversation about his conduct and his relations with Lola Mae Reeves, admitted it. "He said he was guilty." To this defendant excepted. Hoover Adams testified without objection that defendant told him he was guilty of having sexual relations with Lola Mae Reeves. A letter written by defendant to Lola Mae Reeves, expressing

STATE *v.* DAVIS.

regret for what had taken place, was also offered in evidence, over defendant's objection.

There was verdict of guilty as charged, and from judgment imposing sentence the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Neill McK. Salmon for defendant.*

DEVIN, J.   The defendant noted numerous exceptions to the rulings of the trial court, but the principal attack made on the validity of the verdict and judgment below was on the ground that Lola Mae Reeves and Miss Wooten were rendered incompetent to testify against the defendant by the proviso in the statute defining the criminal offense of fornication and adultery that "the admissions or confessions of one shall not be received in evidence against the other."   G.S. 14-184.   However, we think this statutory prohibition relates to extra-judicial declarations and does not have the effect of preventing one jointly charged with this offense, who is no longer on trial, from testifying as a witness in the trial of the other to facts, otherwise competent, which are within her personal knowledge.   Though indicted with defendant Davis, at the time Lola Mae Reeves testified as a witness her plea of *nolo contendere* had been accepted by the State and she was not on trial.   She was not making a confession or an admission but testifying as a witness in support of the State's charge against the defendant Davis.

The words "admissions or confessions" may not here be regarded as synonymous with testimony.   These terms usually refer to extra-judicial declarations made to others and which subsequently are offered in evidence against the party who made them.   An admission or confession is not testimony but a fact to be proven by testimony.   The prohibition of the statute is directed not to the person testifying but against the use in evidence of his previous admissions or confessions.   *S. v. Rinehart,* 106 N. C. 787, 11 S. E. 512; *S. v. Williams,* 129 N. C. 581, 40 S. E. 84; 20 A. J. 472, 2 Wigmore, sec. 816, 1048.   True, the admissions of one defendant are not ordinarily admissible against his co-defendant under the general rules of evidence regardless of this statute, but the declaration by the Legislature of a rule of evidence already recognized should not be held as suggesting a different legislative intent but rather as cumulative.

The offense of fornication and adultery came under the ban in North Carolina as early as 1741.   Potter's Laws, 144.   In 1805 the amended statute denouncing such conduct concluded with the proviso "that the evidence of the person who may be *particeps criminis* shall not be ad-

mitted to charge any defendant under this Act." This language was retained in the Revised Statutes of 1836, but in the Revised Code of 1854 the qualifying clause was modified to provide "that the admissions or confessions of one shall not be received in evidence against the other." This form of expression has been retained unchanged in all subsequent codifications. G.S. 14-184. Interpreting this statute this Court in 1877, in *S. v. Phipps,* 76 N. C. 203, approved the competency of the testimony of a co-defendant under circumstances substantially similar. In that case the defendants were indicted for fornication and adultery under this statute. After a *nolle prosequi* had been entered as to the *feme* defendant she was introduced as a witness to prove the charge against her co-defendant. Replying to the question presented by the appeal, "was she a competent witness for that purpose," this Court answered that she was. While the Court in its opinion in that case did not specifically cite this statute, it may not be deduced that the Court was inadvertent to the language of a statute it then had under consideration, and the question had been called to the attention of the Court in the defendant's brief where it was argued as here that the testimony of the *feme* defendant in open court was an "admission."

With this decision indicating the Court's interpretation of the effect of the language of the statute on the reception of the evidence of a co-defendant, announced in 1877, the statute has remained unchanged through subsequent re-codifications. We think the question should be regarded as definitely settled against the defendant's contention. In *S. v. Guest,* 100 N. C. 410, 6 S. E. 253, it was said: "In the case of *S. v. Phipps,* 76 N. C. 203, a *nol. pros.* was entered as to the female defendant, and she was allowed to testify, and prove the offense charged against the other defendant." In *S. v. Roberts,* 188 N. C. 460, 124 S. E. 833, the *feme* defendant's declarations tending to inculpate the male defendant were held admissible in evidence against him on the ground as stated by *Chief Justice Hoke,* that they were made in the male defendant's presence. In *S. v. Rinehart,* 106 N. C. 787, 11 S. E. 512, the extra-judicial admissions of the male defendant to a third person were held excluded from reception in evidence against the *feme* defendant under this statute. This would seem to indicate the purpose and extent of the enactment.

When the legislative prohibition is against the person testifying appropriate language to that effect is used. In G. S. 8-51 it is declared an interested party "shall not be examined as a witness" in his own behalf against the administrator of the deceased person, and in G.S. 50-10 the language is "neither husband nor wife shall be a competent witness to prove adultery." This latter categorical prohibition as to the person is in addition to the proviso in the same section that the "admissions" of

neither party shall be "received in evidence," which would seem to mark the distinction.

The trend of the development of the rules of evidence has been to open rather than close the avenues to legal proof of facts in issue, and to remove personal disqualification to testify. G.S. 8-49. Evidence is the means whereby the truth of a matter may be established, and its production should not be barred unless clearly prohibited by statute, or in the interest of a well-defined public policy. In the absence of either in this case we see no substantial reason why one who had been jointly charged should not have been permitted to testify against the defendant then on trial.

It follows, if Lola Mae Reeves was competent to testify as a witness in the trial, it was also competent for the State to support her testimony by corroborating evidence, offered after she had gone upon the stand, that she had made substantially the same statement to Miss Wooten at the inception of the investigation, and Miss Wooten's testimony was by the court carefully restricted to this purpose. *S. v. Williams, supra,* 140 A. L. R. 169; *S. v. McKeithan,* 203 N. C. 494, 166 S. E. 336; *S. v. Gore,* 207 N. C. 618, 178 S. E. 209. Nor can the defendant's exception to the testimony of the witness Jackson that the defendant Davis, in the course of a conversation about the latter's relations with Lola Mae Reeves, said "he was guilty." If, as suggested, he was then referring to another charge bottomed on sexual relations with her, it was competent as an admission of acts which with other similar acts tended to prove the offense of fornication and adultery. *S. v. Abernethy,* 220 N. C. 226 (230), 17 S. E. (2) 25; *Commonwealth v. Elliott,* 292 Pa. 16; *S. v. Willis,* 71 Conn. 293. A similar admission made by defendant Davis to the witness Adams was received without objection.

The defendant's exception to the testimony of Martha Raines, another young girl who was living in the orphanage at the time, that defendant made improper advances to her, cannot be sustained. This evidence was competent as showing the attitude, animus and purpose of the defendant, and as corroborative of the State's case. In *S. v. Edwards,* 224 N. C. 527, 31 S. E. (2) 516, where the defendant was charged with carnal knowledge of his young daughter, another daughter was permitted to testify that he had made advances of similar nature to her. See also *S. v. Harris,* 223 N. C. 697 (701), 28 S. E. (2) 232, where the rule is aptly stated.

The defendant noted exception to certain portions of the judge's instructions to the jury, but upon examination of the entire charge, and considering it contextually, we observe no prejudicial error. The court properly instructed the jury that if they found beyond a reasonable doubt that the defendant Davis and Lola Mae Reeves, not being married to each

other, engaged in sexual intercourse with each other with such frequency during the period to which the testimony related, that these illicit relations were habitual, they should return verdict of guilty. *S. v. Davenport,* 225 N. C. 13 (17), 33 S. E. (2) 136.

The burden was on the defendant to show prejudicial error. To warrant a new trial it must be made to appear that the rulings of the court below, now complained of, were material and prejudicial to his rights, and that but for such rulings a different result probably would have ensued. *S. v. King,* 225 N. C. 236, 34 S. E.(2) 3.

The evidence was sufficient to warrant submission of the case to the jury, and defendant's motion for judgment of nonsuit was properly overruled. The defendant offered no evidence, and the jury accepted the State's evidence and found the defendant guilty as charged. We discern no sufficient reason for disturbing the result. The verdict and judgment will be upheld.

No error.

STACY, C. J., dissenting: The question for decision is whether statements or declarations of one paramour may be used against the other in a prosecution for fornication and adultery. The answer is to be found in the character and content of the statements or declarations. If they contain or amount to admissions or confessions of guilt, to that extent they are inhibited by the statute. Otherwise and if otherwise competent, they may be given or received in evidence.

The statute forbidding fornication and adultery, G.S. 14-184, is couched in the following language:

"If any man and woman, not being married to each other, shall lewdly and lasciviously associate, bed and cohabit together, they shall be guilty of a misdemeanor: Provided, that the admissions or confessions of one shall not be received in evidence against the other."

It is the position of the appellant that the proviso of the statute was disregarded to his prejudice in the reception of the testimony of Lola Mae Reeves and also in the admission of the corroborative evidence of Marguerite Wooten.

I. *Exceptions Nos. 1 to 175 and 190 to 204:* The competency of the testimony of Lola Mae Reeves to prove the gravamen of the charge is held by the majority to be controlled by the decision in *S. v. Phipps,* 76 N. C. 203 (1877). In that case, however, no reference is made to the proviso in the statute upon which the prosecution was founded. Only the statute, G.S. 8-49, relating to the competency of witnesses in general is cited as authority for the position taken, and the law on the subject had been changed several times within the decade immediately prior thereto. Apparently, the question debated was whether the witness was incapaci-

STATE v. DAVIS.

tated "from interest or crime" to testify as was the case at common law and at the time of the codification of the subject statute in 1854. Chap. 34, Sec. 45, Code of 1854. This seems manifest from the language used, "she was not (competent to prove the charge) until the Act of 1866," and the single authority cited, *S. v. Rose,* 61 N. C. 406, which dealt exclusively with the competency of parties of record to testify.

The proviso was clearly overlooked in the cited case. There is no reference to it in the Court's opinion, which consists of only seven sentences. The decision is the law of that case, and no more. It is not a precedent here. How could it be known or understood that the proviso was there practically avoided or annulled when no mention is made of it in the opinion, and the competency of the witness was expressly made to rest on another statute? The Court's inattention to the proviso is revealed in the last paragraph of the opinion. The decision was patently an inadvertence. It was, and is, in direct contravention of the statute. The effort to invest it with authority which it obviously does not possess seems somewhat strained. *Stare decisis* is a sound principle, to be applied in proper cases, but "a single decision is not necessarily binding . . . and an opinion is not authority for what is not mentioned therein." *Lowdermilk v. Butler,* 182 N. C. 502, 109 S. E. 571. There is no virtue in persisting in error, as two wrongs do not make a right. *S. v. Martin,* 188 N. C. 119, 123 S. E. 631; *Spitzer v. Comrs.,* 188 N. C. 30, 123 S. E. 636.

Conversely, in the later case of *S. v. Simpson,* 133 N. C. 676, 45 S. E. 567 (1903), it was held that "under the peculiar and yet proper provision in section 1041 of the Code (now G.S. 14-184) admissions of a defendant (on the witness stand), while competent against the one making them, are not competent against the other." The Court was here speaking of inculpatory "admissions and declarations" made by the male paramour while testifying in a trial before a justice of the peace. He was convicted on such admissions, and the jury was instructed that "there was no evidence proper to be considered by them against the *feme* defendant."

Moreover, this statute has been brought forward and re-enacted on several occasions, without change, since the decision in the *Phipps case.* More of this anon.

In a number of later cases it has been held that an extra-judicial admission of one of the parties is competent only against the party making it and may not be received in evidence against the other. *S. v. Rinehart,* 106 N. C. 787, 11 S. E. 512; *S. v. Cutshall,* 109 N. C. 764, 14 S. E. 107; *S. v. Simpson,* 133 N. C. 676, 45 S. E. 567; *Powell v. Strickland,* 163 N. C. 393, 79 S. E. 872. Compare *S. v. Guest,* 100 N. C. 410, 6 S. E. 253 (where the husband of the *feme* paramour was allowed to testify, not the *feme* paramour as stated in *Powell v. Strickland*).

STATE *v.* DAVIS.

In at least three cases it has been said that an extra-judicial declaration of one of the parties, made in the presence of the other, may be used against the other, not to prove the truth of the declaration, but to show the behavior of the other concerning it. *S. v. Roberts,* 188 N. C. 460, 124 S. E. 833; *S. v. Lawson,* 123 N. C. 740, 31 S. E. 667; *S. v. Austin,* 108 N. C. 780, 13 S. E. 219. The general rule is, that a declaration made to or in the presence and hearing of a person, accusing him of the commission of or complicity in a crime, is, when not denied, admissible in evidence against him as warranting an inference of the truth of such declaration; provided, the occasion is such as to call for a denial. *S. v. Wilson,* 205 N. C. 376, 171 S. E. 338. It is the occasion, colored by some circumstance or significant conduct on the part of the accused, which renders such statements, otherwise incompetent as hearsay, admissible in evidence. *S. v. Evans,* 189 N. C. 233, 126 S. E. 607. The fact that such a declaration is made by the wife of the defendant or one not competent to testify against him, while material, is not regarded as controlling in determining its competency. *S. v. Portee,* 200 N. C. 142, 156 S. E. 783, 80 A. L. R. 1229. Even so, the principle of these decisions is inapposite here. There are no facts to attract it.

The inhibition of the statute makes no distinction between judicial and extra-judicial admissions or confessions. It is unbending in its severity: The admissions or confessions of the one "shall not be received in evidence against the other." *S. v. Ballard,* 79 N. C. 627. The testimony of the principal witness inculpated both parties. To the extent that it was self-incriminatory, it constituted an admission or confession within the meaning of the statute. *S. v. Simpson,* 133 N. C. 676, 45 S. E. 567; *S. v. Farrell,* 223 N. C. 804, 28 S. E. (2) 560; *S. v. Melton,* 120 N. C. 591, 26 S. E. 933. It is this which the proviso excludes as "evidence against the other." The inhibition is all-inclusive. It makes no distinction between admissions or confessions in the courtroom and those on the outside. They both run afoul of the inhibition. Nor is it material that the witness was no longer on trial. This could have no bearing upon the effectiveness of the proviso.

The argument advanced in favor of the opposite view is, that at the time of the codification in 1854, neither party could testify, and the proviso was necessarily limited to extra-judicial admissions or confessions; that the later removal of this incapacity of the parties to testify left the proviso intact without modification or enlargement, and that it has no application to the direct testimony of the parties. *S. v. Rose,* 61 N. C. 406. *Cf. S. v. McDowell,* 101 N. C. 734, 7 S. E. 785.

While it may be true that at the time of the codification in 1854 the proviso operated only on extra-judicial admissions or confessions, this was so, not because of its circumscription, but for want of any judicial

admissions or confessions to affect. It is broad enough to cover both, and it was the intention of the General Assembly at the time that both should be excluded, except as against the one making them. *S. v. Rinehart, supra.* There has been no change in the statute to indicate a contrary purpose. It is in the same form now as in 1854. The subsequent re-enactments have had the effect of activating the proviso to affect all within its scope and meaning, if such activation were needed to reach admissions or confessions made on the witness stand.

It is also suggested, though not debated on brief, that prior to 1854, the inhibition applied only to "the evidence of the person who may be *particeps criminis,"* whereas in the codification of that year the language of the proviso was changed to its present form and had the effect of removing the evidence of the person *particeps criminis* from its terms. A different view is indicated. The real result was quite the contrary or just the opposite. One *particeps criminis* or party of record was incapacitated to testify at the time, and the purpose of the change was to broaden the scope of the proviso so as to include admissions or confessions of any and all kinds, whenever and wherever made. Whether the testimony of a paramour comes within the inhibition depends upon its character and content. One may admit or confess guilt on the witness stand as readily as anywhere else, and the decisions so hold. Every lawyer knows the deadly effect of an admission or confession which falls from the lips of a party-witness. The proviso speaks to substance, not form, nor technicality, nor time, nor place.

Furthermore, for all practical purposes, to limit the proviso to extra-judicial admissions or confessions is to eliminate it from the statute. Such admissions or confessions made by one paramour are not competent against the other under the rule of evidence which excludes hearsay, *S. v. Lassiter,* 191 N. C. 210, 131 S. E. 577; *S. v. Allison,* 175 Minn. 218, 220 N. W. 653, 61 A. L. R. 970, unless made in the presence of the other and the occasion is such as to call for a response. *S. v. Roberts, supra; S. v. Wilson, supra.* The proviso would then be operative only in case there were no objection to such evidence. *S. v. Ballard,* 79 N. C. 627; *Hooper v. Hooper,* 165 N. C. 605, 81 S. E. 933. Of course, the principle of silent acquiescence in the face of an accusation of criminality can have no application to testimony or evidence in the courtroom. It is the occasion and the reaction of the accused to the accusation which renders it competent. The failure to respond to evidence creates no presumption against a defendant on trial. G.S. 8-54; *S. v. McNeill, ante,* 377.

True it is, for example, that proof of agency, including its nature and extent, may be made by the direct testimony of the alleged agent, while his extra-judicial declarations are inadmissible to prove the fact of agency or its nature and extent. *Parrish v. Mfg. Co.,* 211 N. C. 7, 188 S. E. 817.

This rests upon a different principle, however, and is unaffected by any legislative restriction.

Fornication and adultery was not indictable at the common law, 37 C. J. S. 119, but is a statutory offense and the proviso in question is a part of the legislative enactment. We must take the law as we find it. The appellant was first tried for obtaining carnal knowledge of a virtuous girl between 12 and 16 years of age and acquitted. G.S. 14-26. He and the principal witness are now charged with fornication and adultery on the same state of facts. *S. v. Malpass,* 189 N. C. 349, 127 S. E. 248. The appellant is entitled to the limitations of the statute under which he is presently indicted. The intention of the lawmaking body is not to be thwarted or defeated by interpretation.

There is no contention that the principal witness is incapacitated to testify in the case, but only that her admissions or confessions of guilt, wherever made, are not to be received in evidence against the appellant. Such is the meaning of the proviso which is neither obsolete nor outmoded but is equally as old and as new as the statute itself—indeed a condition annexed to its enactment, codification and re-enactments.

Finally, it should be remembered that while the alleged *feme* paramour seems willing to assume the role of prosecuting witness here, the tables may be turned in the next case, and to guard against imposition on the part of either, it is provided that the admissions or confessions of the one shall not be received in evidence against the other. Such is the law as it is written. *S. v. Simpson, supra.* After all is said and done, we must come back to the statute on which the prosecution is founded.

II. *Exceptions Nos. 181 and 182:* In any event, the testimony of Marguerite Wooten should have been excluded. It discloses an extra-judicial confession on the part of the alleged *feme* paramour; and while admitted only in corroboration of the principal witness, it was necessarily received in evidence against the appellant and is forbidden by the express terms of the statute. *S. v. Ballard,* 79 N. C. 627; *S. v. Simpson,* 133 N. C. 676, 45 S. E. 567.

The contrary suggestion has at least the merit of novelty. Prior to the present decision, it would have been regarded as an innovation, both in law and in logic. The notion that the State's corroborative evidence was not offered against the appellant represents a new conception of this kind of evidence. It hurts, but it was not used for that purpose. Palpably a *non sequitur.* Undoubtedly the solicitor considered the evidence important, since one jury had disbelieved the principal witness, and he therefore pressed for support of her testimony on the present prosecution. Conjure with these exceptions as we will, the conviction is firmly engendered that error was committed in the reception of the evidence, even under portions of the majority opinion, and yet the exceptions are over-

ruled. The reasons advanced in support of its admission are beside the point. The evidence is incompetent by reason of the statutory inhibition. The reception of evidence, made incompetent by statute, constitutes reversible error, and even when not challenged by exception, it will be considered *ex mero motu* by this Court on appeal. *Hooper v. Hooper, supra; Broom v. Broom,* 130 N. C. 562, 41 S. E. 673; *S. v. Gee,* 92 N. C. 756. Here, objections to the evidence were duly noted at the time.

Let us test it by illustration in this way: The solicitor fearing that the jury might disbelieve the principal witness, as did the former jury, seeks to shore up her testimony by showing that she had made an extra-judicial confession to her matron. The solicitor's fears are well founded, and without the corroborative evidence the appellant would have been acquitted; whereas, with it, he is convicted. Under these circumstances, to say that the confession offered in corroboration was not offered or received in evidence against the appellant is, to say the least, to engage in distinctions too attenuate for practical purposes. If this testimony, which spells the difference between acquittal and conviction, were not offered or received in evidence against the appellant, then upon what evidence was he convicted? The question seems to answer itself.

The provisional clause of the statute makes no distinction between the purposes for which the inhibited admissions and confessions are offered. It forbids their reception "in evidence against the other," for any purpose, and such is the effect of the holdings in *S. v. Ballard, supra,* and *S. v. Simpson, supra.* So, in overruling these exceptions, the proviso of the statute and the decisions in the *Ballard* and *Simpson cases* are perforce ignored or disregarded.

The fact that there may be other competent evidence, sufficient to convict, affords no basis for overruling these exceptions. This evidence went to the heart of the case, and entitles the appellant to another hearing.

III. *Exceptions Nos. 183 to 186:* The Chairman of the Board of Trustees of the Orphanage, C. A. Jackson, testified that he had a conversation with the appellant on the fourth Sunday in May, 1947, in which "he admitted he was guilty of the crime he was charged with." Objection; overruled; exception. Of what crime did the defendant admit he was guilty? The witness does not say. The appellant was then charged with carnal knowledge of a virtuous girl between 12 and 16 years of age on which he was later tried and acquitted. It was not until seven months thereafter, when the present bill was found by the grand jury at the January Term, 1948, that he was charged with fornication and adultery. The admission or confession, in the manner and form stated, appears too indefinite for general use in the present prosecution. It was necessarily prejudicial, as it was offered to prove the gravamen of the present charge and accordingly admitted.

The defendant has been convicted on incompetent evidence. Whatever his offense he is entitled to a hearing within the confines of the statute and otherwise free from error. "No person ought to be . . . deprived of his . . . liberty . . . but by the law of the land." Declaration of Rights, Art. I, Sec. 17. It were better that the defendant be tried again, or even allowed to escape, than that strikes should be called against him on balls which are clearly wide of the plate.

WINBORNE and DENNY, JJ., concur in dissent.