STATE v. ROBERT J. KLEIMAN AND NELLA WYATT.

(Filed 15 December, 1954.)

**1. Fornication and Adultery § 1—**

A single act of illicit sexual intercourse does not constitute fornication and adultery as defined by G.S. 14-184, the offense being habitual sexual intercourse in the manner of husband and wife by a man and woman not married to each other. However, the duration of the association is immaterial if the requisite habitual intercourse is established, and it has been held that a period of two weeks is sufficient to constitute the offense.

**2. Fornication and Adultery § 4—**

In a prosecution under G.S. 14-184, the acts of illicit intercourse may be proved by circumstantial evidence, and it is not required that even one such act be directly proven.

**3. Fornication and Adultery § 1—**

In a prosecution under G.S. 14-184, it is not required that the State prove that the male defendant and his wife were separated.

**4. Fornication and Adultery § 4—Evidence of defendants' guilt of fornication and adultery held sufficient to be submitted to jury.**

Evidence tending to show that the male defendant rented the dwelling, that the *feme* defendant and her two young children moved therein, that for a period of some sixteen days the car of the male defendant was habitually seen parked at the premises during the evenings and the male defendant was seen frequently leaving the premises late at night or in the mornings, and that when officers went to the dwelling early in the morning of the sixteenth day, they were admitted by the *feme* defendant after some delay and found the male defendant standing nude in a closet, *is held* sufficient to be submitted to the jury in a prosecution of fornication and adultery. Failure of the State's evidence to show, except by inference, that the wife of the male defendant was not at the dwelling at the time is immaterial.

**5. Fornication and Adultery § 5—**

The instruction as to the elements of the offense of fornication and adultery under G.S. 14-184 *held* without error.

APPEAL by defendants from *Whitmire, Special J.,* 10 May (1954) Criminal Term, of GUILFORD.

STATE *v.* KLEIMAN.

Criminal prosecution on bill of indictment charging fornication and adultery, under G.S. 14-184. Defendants pleaded Not Guilty.

The State offered the testimony of two police officers of Greensboro and of M. P. Brown, who lived at 2804 Robinhood Drive, tending to establish these facts:

1. Defendants were married, but not to each other. In October, 1953, defendant Kleiman and his wife, and *feme* defendant and her husband, had lived in separate portions of a duplex house.

2. On 5 March, 1954, Brown's wife, who had charge of the rental of the dwelling at 2806 Robinhood Drive, separated from the Brown home by a driveway, rented the premises (furnished) to defendant Kleiman. The *feme* defendant had called Mrs. Brown with reference thereto. On the date mentioned, at the request of the defendant Kleiman, Brown went over and gave instructions as to lighting the furnace and as to the purchase of fuel oil.

3. Upon rental of the premises by defendant Kleiman, the *feme* defendant and her two young boys, ages 2 and 4, moved in. They lived there until 21 March. Brown, who got off work around 6 p.m., saw the *feme* defendant there three or four times a week and observed the children in the yard. He saw others, men and women, go in and out of the house, both day and night.

4. Defendant Kleiman drove a black Chrysler car. Brown saw defendant Kleiman on the premises some six or eight times between 5 March and 21 March, going in and out of the house; and on one occasion he observed him leave the house one morning between 6:30 and 7 o'clock and drive away in the black Chrysler. On other occasions he saw the black Chrysler parked at the house. It was so parked on the evenings during the week preceding the arrest.

5. Early Sunday morning, 14 March, the house was dark except for a bathroom light. A police officer, observing the house, heard a door opening about 3:20 a.m.; then a dim light came on in the front room; someone came out and got in the Chrysler car; the car choked while being backed out into the street; the door was opened and the light came on in the car so that the driver could be recognized. "It was Mr. Kleiman." On other occasions he had seen the Chrysler parked at the house.

6. Between midnight and 5:30 a.m. on 21 March, 1953, the officers watched the house closely. During this time the Chrysler was parked there. About 3 a.m. a couple came out of the house, got in a car and drove away. Shortly afterwards, another couple drove up, went into the house, leaving shortly after 5 a.m. In just a few minutes, the lights in the house went out. The officers went up to the house. They heard the voices of a man and a woman in the back bedroom. They knocked at the front door. After noises of scrambling about inside the house, the *feme* defendant

said: "Who is it?" Identifying themselves as officers, they asked her to open the door. She was heard running back, away from the door, saying, "Just a minute, I've got my baby." No baby was there. There were two bedrooms. The two boys, asleep, occupied one bedroom. The *feme* defendant and the officers went to the other bedroom. The sheets and pillows on the bed were rumpled. *Feme* defendant's clothing consisted of "a very thin, transparent nightgown." *Feme* defendant told them no man was there. After searching elsewhere in the house, one of the officers opened the door to the bedroom closet. "Mr. Kleiman was standing there completely nude." The two defendants and the two children were the only persons in the house. Defendants were placed under arrest.

7. Other evidence, which need not be recounted, together with that narrated above, indicates rather plainly that the defendants had engaged in sexual intercourse on this occasion.

8. "I noticed male and female clothing in the closet where we found Mr. Kleiman. There were several pieces of male and female attire and clothing. I saw shoes around. I saw a shaving kit, razor, shaving soap in the bathroom, only the regular toilet goods that are used in a bathroom." Another officer saw more than one suit of men's clothing.

The jury returned verdicts of Guilty as charged. Thereupon, the court pronounced judgment, as to each defendant, from which defendants appeal, assigning as errors (1) the overruling of their motions to dismiss as of nonsuit, and (2) designated portions of the charge.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and Harvey W. Marcus, Member of Staff, for the State.*
*Harry R. Stanley for defendants, appellants.*

BOBBITT, J. The only evidence before the court and jury was that offered by the State. The sole inquiry, as to nonsuit, is whether this uncontradicted evidence, and every reasonable inference to be drawn therefrom, considered in the light most favorable to the State, is sufficient for submission to the jury. *S. v. Ritter,* 239 N.C. 89, 79 S.E. 2d 164, and cases cited.

While conceding the evidence shows an act of illicit sexual intercourse on 21 March, 1954, defendants contend it does not show that they did unlawfully, "lewdly and lasciviously associate, bed and cohabit together," as charged in the bill of indictment.

A single act of illicit sexual intercourse is not fornication and adultery as defined by G.S. 14-184, *S. v. Ivey,* 230 N.C. 172, 52 S.E. 2d 346; for, as stated in *S. v. Davenport,* 225 N.C. 13, 33 S.E. 2d 136, " 'Lewdly and lasciviously cohabit' plainly implies habitual intercourse, in the manner of husband and wife, and together with the fact of not being married to

each other, constitutes the offense, and in plain words draws the distinction between single or non-habitual intercourse and the offense the statute means to denounce."

But, as stated further by *Seawell, J.,* in the opinion in the *Davenport case:* "It is never essential to conviction that even a single act of illicit sexual intercourse be proven by direct testimony. While necessary to a conviction that such acts must have occurred, it is, nevertheless, competent to infer them from the circumstances presented in the evidence." And, as stated by *Davis, J.,* in *S. v. Rinehart,* 106 N.C. 787, 11 S.E. 512: "From the very nature of the offense, it is usually proved by circumstances—rarely by positive and direct evidence of the adulterous acts. It is not necessary that the defendant should have been seen bedding and cohabiting together."

True, as contended by defendants, the evidence shows the association between defendants only between 5 March and 21 March. Ordinarily, the duration of the association, as an element of the offense, is immaterial. In *S. v. McDuffie,* 107 N.C. 885, 12 S.E. 83, an instruction that habitual illicit sexual intercourse for two weeks was sufficient to constitute the offense, was approved.

Defendants insist that the State's evidence does not show that defendant Kleiman and his wife were separated but that inferences to be drawn therefrom point in the other direction. This, as an element of the offense, is immaterial; for in *S. v. Guest,* 100 N.C. 410, 6 S.E. 253, where the conviction was affirmed, the adulterous association was in the home where the *feme* defendant and her husband resided.

Defendants insist that the State failed to show that Mrs. Kleiman did not live at 2806 Robinhood Drive. This contention is without force or merit. Certainly there is no evidence that she did live there or was ever seen there. The evidence tending to show what persons were seen at the house, together with the evidence that the *feme* defendant and defendant Kleiman made arrangements for the rental of the house, tends to negative any idea that Mrs. Kleiman was in any way involved at 2806 Robinhood Drive.

Conceding that the events of 21 March, *standing alone,* would have been insufficient, and conceding that the circumstances as to what transpired from the rental of the house until 21 March, *standing alone,* would have been insufficient, yet when considered in combination the evidence was sufficient to carry the case to the jury; for all that occurred on 5 March and thereafter must be considered and its significance determined in the light of what occurred on 21 March.

The exceptions to the charge are without merit. The exceptions, in the main, relate to portions of the charge wherein the court was reviewing contentions. Aside from the rule that any error in the statement of

contentions should be called to the attention of the court when it occurs, *S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608; *S. v. Stone, post,* 294, careful consideration fails to disclose prejudicial error. Indeed, the argument advanced in support of these exceptions is in effect addressed to the insufficiency of the evidence for submission to the jury.

Included in the portions of the charge to which exceptions were taken are these instructions of law: "In this connection, the Court charges you that one act of sexual intercourse is not sufficient to sustain a conviction in a case of this kind. Lewdly and lasciviously means simply habitual sexual intercourse in the manner of husband and wife by a man and woman not married to each other." Again: "So that you are instructed that if you find from the evidence beyond a reasonable doubt that the defendants, not being married to each other, engaged in sexual intercourse with each other with such frequency between March 5th and March 21st that these relations were habitual, then it would be your duty to return a verdict of guilty as charged." These instructions, together with others not quoted, are in conformity with defendants' and our view of the law. Furthermore, the court instructed satisfactorily upon the rules applicable to the consideration of circumstantial evidence.

The case was one for the jury. It seems to have been tried fairly and in accordance with well established principles. No prejudicial error is shown.

No error.