STATE OF NORTH CAROLINA v. EARL ANDREWS GAINEY, JR.

No. 765SC871

(Filed 6 April 1977)

1. **Criminal Law § 34— defendant's commission of other crimes — admissibility**

   In this prosecution for rape and crime against nature, testimony that defendant committed the crimes of burglary, rape and crime against nature against the prosecutrix one week before the commission of the crimes for which he was on trial was properly admitted for the purpose of showing lack of consent and defendant's unnatural lust, identity as the perpetrator, and intent or state of mind.

2. **Criminal Law § 34— defendant's commission of another crime — admissibility**

   In a prosecution for rape and crime against nature, the trial court did not err in refusing to strike testimony by the prosecutrix, in response to defendant's question as to why she failed to call the police when defendant raped her on a previous occasion, that defendant had just gotten home from prison and she didn't want to see him back in jail; furthermore, the admission of such testimony was not prejudicial to defendant where similar testimony was thereafter admitted without objection.

3. **Rape § 4— expert testimony — presence of spermatozoa**

   A physician was properly allowed to testify concerning the presence of spermatozoa in the vaginal fluid of an alleged rape victim although the witness failed to identify them as "human spermatozoa," since there was no evidence that the spermatozoa could have been other than human, and the testimony tended to show penetration and to corroborate the victim's testimony.

4. **Criminal Law § 50; Rape § 4— expert testimony — chain of custody of slide**

   The State's evidence in a rape case established a sufficient chain of custody of a slide to permit a pathologist to testify as to his analysis of the slide where it tended to show that the victim's name was placed on the slide when it was prepared, the slide was then placed in a "rape box" and the box was locked, the box always remains in the emergency room until the pathology department comes to get it, and the pathology department did receive the slide two days later for pathological examination; furthermore, any error in admission of testimony about the slide was harmless in view of the victim's substantial testimony of penetration.

5. **Criminal Law §§ 34, 60— fingerprint card**

   Defendant in a rape prosecution was not prejudiced by the admission of a fingerprint card made in 1966 where the card did not disclose any arrest, indictment or conviction of defendant, and the only evidence relating the card to another criminal offense was an

officer's testimony that he had made defendant's fingerprint impressions on the card at the Wilmington Police Department in 1966.

**6. Rape § 4— intercourse with third person — inadmissibility**

In this rape prosecution, cross-examination of the prosecutrix as to whether she had had sexual intercourse with a third person was not relevant to explain the presence of sperm after the alleged rape where the prosecutrix had previously testified that she had not had intercourse with the other person during the week prior to the alleged rape.

APPEAL by defendant from *James, Judge.* Judgment entered 23 April 1976 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 9 March 1977.

Defendant was charged, in separate bills of indictment, proper in form, with the felonies of second-degree rape and crime against nature. He entered a plea of not guilty as to each charge.

The State's evidence tended to show that the defendant is the ex-husband of Patricia Gainey, the prosecuting witness. On the night of 31 January 1976, the defendant broke into Patricia Gainey's home and forced her to have intercourse and oral sex with him; prosecutrix did not call the police because defendant had just gotten out of prison and was on his way to Florida for another trial. Moreover, she did not notify the police because she wanted him to have a chance to visit with their daughter, who was staying with defendant's parents at the time.

On 6 February 1976 defendant again broke into Patricia Gainey's apartment in the nighttime and forced her to have intercourse and oral sex with him. She asked defendant to stop but did not put up any resistance for fear of being assaulted again. After the defendant left, she called the police and reported the incidents of 31 January and 6 February 1976.

A set of fingerprints on a beer bottle found in the trash in Patricia Gainey's bathroom shortly after the 6 February incident matched the defendant's 1966 fingerprint card and revealed that the prints on the beer bottle were those of defendant. When a police officer attempted to arrest defendant on 7 February 1976, defendant jumped out of his truck and ran. He was subsequently arrested on 8 February 1976.

Ann Godwin testified that she saw Patricia on the morning of 1 February 1976; that Patricia was hysterical; that she had

red marks on her breasts; that she had bruises on her arms; and that she had a red mark on her throat which she said was caused by defendant's knife. Medical evidence tended to show the presence of sperm in the victim's vagina within a short time after the assault.

Defendant offered evidence tending to show that he was at his sister-in-law's house during the hours between 5:00 p.m. on 6 February and 2:30 a.m. on 7 February 1976 when the alleged assaults occurred. His sister testified that on the day defendant was arrested she was driving him to Raeford to turn himself in.

Defendant was found guilty of each charge and from judgment pronounced imposing imprisonment in each case, the defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General William F. Briley, for the State.*

*Rountree & Newton, by William B. Harris III, for the defendant.*

MARTIN, Judge.

[1]   Defendant preserves and presents ten assignments of error. He first contends the court erred in overruling his objection to certain testimony regarding crimes allegedly committed by him prior to the alleged commission of the crimes for which he was on trial. In spite of his objection, the State was allowed to introduce testimony that the defendant had committed the crimes of rape, burglary, and crime against nature on the night of 31 January 1976, one week before the alleged commission of the crimes in the instant case.

It is well settled in this State that if a criminal defendant has not testified, evidence that he has committed another distinct, independent, separate offense is not admissible if its only relevancy is to show the character of the defendant or his disposition to commit an offense of the nature of the one for which he is presently on trial. *State v. Felton,* 283 N.C. 368, 196 S.E. 2d 239 (1973) ; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). If, however, the evidence in question tends to prove any fact relevant to the charge on which the defendant is presently on trial, it is not inadmissible merely because it also shows him

to have been guilty of another, independent crime. *State v. Felton, supra; State v. McClain, supra.*

The decisions in this jurisdiction have been

". . . markedly liberal in holding evidence of similar sex offenses admissible . . . [to show knowledge, intent, motive, plan or design, identity, etc.] especially when the sex impulse manifested is of an unusual or 'unnatural' character." 1 Stansbury, N. C. Evidence, § 92 (Brandis rev. 1973). See also *State v. Spain,* 3 N.C. App. 266, 164 S.E. 2d 486 (1968).

Our courts have repeatedly held other or repeated sex acts to be admissible to show: lack of consent, *State v. Parish,* 104 N.C. 679, 10 S.E. 457 (1889); the "unnatural" lust of the defendant, *State v. Edwards,* 224 N.C. 527, 31 S.E. 2d 516 (1944); the defendant's attitude, animus, and purpose, *State v. Davis,* 229 N.C. 386, 50 S.E. 2d 37 (1948); intent, design or guilt on the grounds of being in corroboration, *State v. Browder,* 252 N.C. 35, 112 S.E. 2d 728 (1960); *modus operandi* or common plan and identity of defendant, *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972); and *quo animo* or state of mind, *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973).

The evidence here in question was clearly relevant to show lack of consent, defendant's unnatural lust, identity as the perpetrator, and defendant's intent or state of mind. The evidence was therefore admissible.

[2]    Defendant next contends the court erred in denying his motion to strike Patricia Gainey's testimony relating to the fact that defendant had previously been in prison. On cross-examination the defendant elicited the following testimony from Patricia Gainey: "I do have a telephone in my apartment, but I did not call the police after he left." Defendant's counsel then asked: "Other than asking him to stop, you didn't resist him on this occasion, did you?" The response was: "No, sir. When I came back, I didn't call the Police because he had just gotten home from prison. He was on his way to Florida for trial." The defendant moved to strike this answer as unresponsive but the court denied the motion by asserting that defendant had "opened the door." Immediately after the court's ruling, Mrs. Gainey continued her testimony: "He just came home the day before. He was on bond from Florida. I wanted to give him a chance to

be with his daughter. She loves him. I didn't want to see him back in jail, and he still had Sarah Jean too."

We hold that there was no abuse of discretion on the part of the trial judge in refusing to strike what appeared to be a full answer to defendant's question concerning her failure to call the police. Moreover, the prosecuting witness subsequently testified, without objection or a motion to strike, that defendant had just gotten out of prison and was going to Florida in a week "for armed robbery." Consequently, defendant's original objection to the evidence was lost since evidence of like import was admitted after the admission of the challenged testimony. *State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4 (1967). This assignment of error is therefore overruled.

[3] Defendant's fourth assignment of error relates to the admission over objection of a physician's testimony concerning a microscopic examination of a slide and the results thereof. He contends the testimony about the examination of the vaginal fluid of the prosecuting witness failed to identify the spermatozoons which were found as being "human spermatozoon." This contention is untenable. Nowhere is there even a scintilla of evidence that the sperm could have been other than human. The State does not have the burden of offering scientific evidence to prove that the specific sperm found came from a specific individual. Prosecutrix testified to the completed act of intercourse. There is no question of mistaken identity. The challenged evidence tended to show penetration, one of the essential elements of rape, and was corroborative of prosecuting witness. It was properly admitted. See *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732 (1970).

[4] Defendant contends, in his fifth assignment of error, that the court erred in allowing the pathologist to testify regarding his analysis of a slide because the State failed to establish a complete chain of custody of the slide from the time it was prepared until the time it was analyzed by the pathologist. State's testimony tended to show, however, that when the slide was prepared the prosecuting witness's name was placed on it; that the slide was then placed in a "rape box"; that the box was then locked; that the box always remains in the emergency room until the pathology department comes to get it; and that the pathology department did in fact receive the slide two days later for pathological examination. We find that this evidence estab-

lishes a chain of custody sufficient to support allowance of the challenged testimony. See *State v. Preston,* 9 N.C. App. 71, 175 S.E. 2d 705 (1970). In any event, there was additional evidence of penetration from the prosecuting witness who testified in much detail on cross-examination concerning the sexual assault upon her by the defendant on 6 February 1976. She testified: "He got on the bed and had intercourse with me. . . . After we had intercourse I went to the bathroom to clean up. ... ." It necessarily follows that her use of the phrase "sexual intercourse" encompasses actual penetration. *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60 (1975). We therefore conclude that there was substantial evidence of penetration even without the expert testimony concerning the analysis of the slide. Hence, any possible error in admitting the slide testimony was harmless.

[5] In defendant's sixth assignment of error he contends the court erred in admitting into evidence a fingerprint card taken when the defendant was arrested on a prior occasion in 1966, because it tends to show that he committed an earlier offense. The card admitted into evidence did not, however, list a single arrest, indictment, or conviction and the only data visible on the card was a right index fingerprint. Moreover, the only evidence admitted before the jury relating the admission of the fingerprint identification card to any earlier criminal offenses was the statement of Captain Turner that he had had occasion to take fingerprints of individuals and place them on fingerprint cards; that he had seen the fingerprint card in question at the identification bureau of the Wilmington Police Department; that he made defendant's fingerprint impressions from defendant's right hand index finger; and that he could identify State's exhibit of the card as being the same card as the one he used in 1966. No inference arising from this testimony could prejudice the jury in their consideration of defendant's guilt. See *State v. Jackson,* 284 N.C. 321, 200 S.E. 2d 626 (1973). This assignment of error is without merit.

[6] In defendant's seventh assignment of error he contends the court erred in sustaining the objection of the State to the following question on re-cross examination: "It is true that you have had intercourse with Clifton Justice, is it not?" If allowed to answer, she would have said "Yes, Sir." Defendant contends the question was relevant to explain the presence of sperm after the alleged rape. Just prior to this question the defense had

elicited from the prosecuting witness testimony to the effect that she had not had intercourse with Clifton Justice during the period of time in which the alleged assault by the defendant had occurred, which was between 31 January 1976 and the night of 6 February 1976. Thus, since the prosecuting witness had denied having intercourse with Clifton Justice immediately prior to the time of the alleged crime, the defendant's contention that the question was relevant is without merit.

Defendant's remaining assignments of error are without merit and are overruled.

No error.

Judges MORRIS and VAUGHN concur.