STATE OF NORTH CAROLINA v. JERRY DAVID REEDER

No. 9119SC339

(Filed 18 February 1992)

**1. Rape and Allied Offenses §§ 5, 19 (NCI3d) — first degree sexual offense — taking indecent liberties — evidence sufficient**

The trial court did not err by denying defendant's motions to dismiss charges of first degree sexual offense and taking indecent liberties where the evidence, taken in the light most favorable to the State, was sufficient to raise inferences that defendant committed each element of the offenses charged.

**Am Jur 2d, Infants §§ 16, 17.5.**

**2. Evidence and Witnesses § 345 (NCI4th) — first degree sexual offense and indecent liberties — prior offenses admissible**

The trial court did not err in a prosecution for first degree sexual offense and taking indecent liberties by admitting into evidence defendant's statement concerning a prior incident of taking indecent liberties where the court admitted the evidence under N.C.G.S. § 8C-1, Rule 404(b) and *State v. Gainey*, 32 N.C. App. 682, which held that evidence of a prior sexual offense was relevant to show defendant's unnatural lust, intent or state of mind.

**Am Jur 2d, Evidence §§ 321, 324.**

3. **Evidence and Witnesses § 2337 (NCI4th) — sexual offense and indecent liberties — testimony of psychologists — credibility of the children — proper foundation**

The trial court in a prosecution for first degree sexual offense and taking indecent liberties properly admitted the testimony of two examining psychologists, despite defendant's contention that the witnesses gave testimony as to the credibility of the children without having laid a proper foundation, where the testimony of both examining psychologists established a sufficient foundation to permit the trial court to allow their opinions to be admitted.

**Am Jur 2d, Expert and Opinion Evidence §§ 168, 169, 180; Rape §§ 100, 101.**

4. **Constitutional Law § 366 (NCI4th) — first degree sexual offenses and indecent liberties — sentences within statutory limitations — not cruel or unusual**

Defendant's sentences for first degree sexual offense and indecent liberties were within the prescribed statutory limitations for the offenses charged and therefore were constitutionally valid in the absence of extraordinary circumstances, which defendant failed to show.

**Am Jur 2d, Criminal Law §§ 625, 626; Infants §§ 16, 17.5; Rape §§ 114, 115.**

5. **Evidence and Witnesses § 1958 (NCI4th) — first degree sexual offense and indecent liberties — physician's report — improperly admitted**

The trial court erred in a prosecution for first degree sexual offense and indecent liberties by admitting a medical report as an exception to N.C.G.S. § 8C-1, Rule 803(6) where the document contained matters which were immaterial and irrelevant and statements which amounted to hearsay upon hearsay.

**Am Jur 2d, Expert and Opinion Evidence §§ 235, 255.**

APPEAL by defendant from *Walker (Russell G., Jr.), Judge.* Judgment entered 6 December 1990 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 15 January 1992.

STATE v. REEDER

[105 N.C. App. 343 (1992)]

Defendant was charged in proper bills of indictment in 89 CrS 143 with first degree sexual offense and taking indecent liberties with a three year old male child, and with the same offenses against a four year old male child, in 90 CrS 63-64, in violation of G.S. 14-27.4 and 14-202.1. The following evidence was presented at trial:

The three-year old child, who was four years old at the time of trial, testified he had attended pre-school at First Assembly Church in Asheboro, North Carolina and remembered defendant being there. The child further testified that on one occasion while he was using the bathroom at First Assembly, defendant touched the child's penis and defendant put his penis into the child's mouth. The child told his mother and Detective Jackie Whalley about what had happened to him.

The child's mother testified that on the morning of 8 May 1989, she dropped her child off at school and saw defendant, who was working as a custodian at the school, pat her son on the head saying, "There's my little buddy . . . ." On the following evening, 9 May 1989, she asked her son about defendant and the child responded "hims got a big penis" and explained that he had seen it in the bathroom. She said the child told her he had touched defendant's penis because defendant told him to and that defendant had touched his penis that day.

Detective Jackie Whalley, an officer with the Randolph County Sheriff's Department, testified that on 10 May 1989, the mother reported the incident, and on 12 May 1989, she interviewed the child. The child told her defendant was a big friend, and he and defendant went to the bathroom together at school. She testified the child said defendant had put his penis in the child's mouth.

Dr. Doug Jackson, a counseling psychologist who conducted four separate interviews with the child, testified the child told him defendant was a bad man who had put his penis into the child's mouth. Dr. Jackson stated the child demonstrated what had happened to him using anatomically correct dolls. He also stated the child acted aggressively toward the adult male doll pretending to shoot and cut it. Based upon the child's conduct during these interviews, Dr. Jackson concluded that he had been sexually abused.

The four-year old child, who was six at the time of trial, testified he had attended pre-school at First Assembly and knew defendant.

STATE v. REEDER

[105 N.C. App. 343 (1992)]

He said that while he was using the bathroom, defendant touched his behind with his penis. The child told his father about the incident some time later when he saw defendant on television and also spoke with Detective Whalley and "another woman" about what had happened.

The child's father testified his son had attended First Assembly pre-school during the 1988-89 school year and had participated in the "after school program" at First Assembly from August 1989 until February 1990. On 24 February 1990, his son was watching a television news broadcast and upon seeing a picture of defendant, the child became very upset and said, "that was Mr. Reeder." The child told him defendant had molested him. When the father inquired further, the child told him defendant had come up behind him while he was using the bathroom and stuck his "pee-pee" into the child's bottom and it hurt real bad. The child told his father he tried to scream, but defendant put his hand over his mouth and told him he would kill him if he told anyone.

The father testified his son said defendant had been doing this to him for a long time and would sometimes grab him by the arm while he was on the playground and take him to the bathroom. The father further testified that his child's story helped explain his behavior over the past year. He stated the child had often come home from school complaining of pain around his bottom. On or about 4 November 1988, the child told him his bottom and "pee-pee" were hurting, and upon examination, the father noticed the area appeared red.

Detective Jackie Whalley interviewed the four-year old child on 25 February and 20 March 1990. She testified the child told her defendant came into the bathroom stall where he was using the bathroom and put his "pee-pee" into his behind and it hurt. The child also said defendant had told him he would kill him if he told anyone.

Dr. Sandra Mills, a clinical psychologist recommended by Detective Whalley, interviewed the child on five separate occasions. Dr. Mills testified the child took a white male anatomically-correct doll and a black boy doll and demonstrated the white male doll putting its penis in the black boy doll's bottom and said defendant did this to him in the bathroom. She further testified the child became very angry with the white male doll, throwing it on the floor and saying "I'm smacking Mr. Reeder and I'm going to kick him.

I'm going to jump on his head. . . . He's not going to touch me anywhere else." From these interviews with the four-year old child, Dr. Mills concluded that he had been sexually abused.

Detective Thomas L. McIver of the Asheboro Police Department testified that he conducted an investigation involving defendant in June, 1986. During the course of that investigation, Detective McIver questioned defendant concerning an incident in which defendant had allegedly taken indecent liberties with two girls who were seven and eight years old. Defendant was advised of his constitutional rights and gave a written statement to Detective McIver in which he described numerous occasions where he had exposed himself to the girls and allowed them to touch his penis to the point of erection. He also admitted having touched the girls' vaginas.

The jury found defendant guilty as charged, and the court entered judgments sentencing defendant to two terms of life imprisonment for the first degree sexual offenses and two ten year terms of imprisonment for the charges of taking indecent liberties with the two children. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Clarence J. Delforge, III, for the State.*

*Assistant Appellate Defender Mark D. Montgomery for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Based upon Assignment of Error No. 10, defendant contends the trial court erred in denying his motion to dismiss the charges of first degree sexual offense and taking indecent liberties with the two children. Defendant simply argues the testimony of the children involved is "unreliable" with respect to the charges of first degree sexual offense, and with respect to the charges of taking indecent liberties, "[t]he trial court did not define for the jury the acts for which it could convict defendant of taking indecent liberties with [the two children]."

G.S. 14-27.4 in pertinent part provides:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim;

A "sexual act" is defined in G.S. 14-27.1(4) as ". . . cunnilingus, fellatio, analingus, or anal intercourse . . . ."

G.S. 14-202.1 provides in pertinent part:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

While defendant argues in his brief the trial court erred in its instructions to the jury, Assignment of Error No. 10 raises only the question of the sufficiency of the evidence to require submission of the charges to the jury. Suffice it to say, when the evidence is taken in the light most favorable to the State, it is sufficient to raise inferences that defendant committed each element of the offenses charged, and we hold the court did not err in denying defendant's motions to dismiss.

[2] Defendant next contends the trial court erred in admitting into evidence defendant's statement to Detective McIver concerning a prior incident of taking indecent liberties with two young girls. He argues this statement was inadmissible under Rules 404(b) and 403 of the North Carolina Rules of Evidence. We cannot agree.

Rule 404(b) states:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

In the case at bar, the trial judge conducted a *voir dire* hearing to determine whether defendant's statement was admissible. In his argument to the court on *voir dire*, the prosecutor stated that the evidence of the prior incident was relevant to show "defendant's unnatural lust, his intent, [and] state of mind." In support of his argument, the prosecutor cited the case of *State v. Gainey*, 32 N.C. App. 682, 233 S.E.2d 671, *disc. review denied*, 292 N.C. 732, 235 S.E.2d 786 (1977). In *Gainey*, this Court held that evidence of defendant's commission of a prior sexual offense was clearly relevant to show defendant's unnatural lust, intent or state of mind. *Id.* The record discloses that in ruling defendant's statement was admissible, the trial judge said:

> . . . I will find that the evidence that the State seeks to offer is relevant to the issues in this case, but it is not on balance unduly prejudicial and will admit it under the authority of Rule 404(b) and the language . . . in *State v. Gainey*, being particularly appropriate and applicable to this situation.

Under these circumstances, we find the trial judge properly admitted into evidence defendant's statement to Detective McIver concerning a prior incident of taking indecent liberties with children. Defendant's contention is meritless.

[3] Defendant also contends "[t]he introduction of opinion evidence was reversible error." He argues the testimony of the two examining psychologists, Dr. Sandra Mills and Dr. Doug Jackson, should not have been allowed since they gave expert testimony as to the credibility of the children without having laid a proper foundation for their opinions.

Rule 702 of the North Carolina Rules of Evidence governs the admission of expert testimony and provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

This Court has often applied Rule 702 to allow experts to testify to the symptoms and characteristics of sexually abused children. *See State v. Murphy*, 100 N.C. App. 33, 394 S.E.2d 300 (1990); *State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988). Furthermore, "where the expert's testimony relates to a diagnosis derived

from the expert's examination of the [child] witness in the course of treatment, it is not objectionable because it supports the credibility of the witness or . . . states an opinion that abuse has occurred." *State v. Speller*, 102 N.C. App. 697, 701, 404 S.E.2d 15, 17 (1991).

In the present case, Dr. Mills testified that she is a clinical psychologist in private practice in Greensboro, N.C., and that she treats and evaluates sexually abused children in the normal course of her practice. She stated that the four-year old child's parents had contacted her seeking evaluation and treatment for their son. In response to the parents' request, Dr. Mills conducted five interview sessions with the four-year old child over a two month period. Her testimony at trial consisted of her observations of the child's behavior, as well as her recollections of statements the child had made to her during the course of these interviews. Dr. Mills further testified that based upon these observations and her professional experience, it was her opinion that the four-year old child had been sexually abused.

Similarly, Dr. Jackson testified that he is a counseling psychologist practicing in Asheboro and Greensboro, N.C. He stated that the three-year old child's mother first brought him in for evaluation and treatment in August, 1989. Dr. Jackson conducted four interviews with the child, and his testimony described the child's behavior during these interviews. Dr. Jackson testified that he had observed behavorial characteristics in the child consistent with those of sexually abused children.

We find the testimony of both examining psychologists established a sufficient foundation to permit the trial court to allow their expert opinions to be admitted into evidence. This contention is without merit.

[4] By Assignment of Error No. 13, defendant claims the sentence imposed by the trial court denied him "his state and federal constitutional rights to be free from cruel or unusual punishments."

We note that the sentence imposed by the trial judge in this case was within the prescribed statutory limitations for the offenses charged and is therefore constitutionally valid in the absence of extraordinary circumstances. *State v. Pruitt*, 94 N.C. App. 261, 380 S.E.2d 383, *disc. review denied*, 325 N.C. 435, 348 S.E.2d 545 (1989). In his brief, defendant recognizes the facial validity of these

statutes and fails to show the existence of any extraordinary circumstances in this case. This assignment of error is thus overruled.

[5]  Finally, defendant contends the court erred in allowing into evidence, over his objection, State's Exhibit 2, "[a] written report allegedly completed by Dr. Martha Sharpless on April 9, 1990 . . . ." concerning her examination and evaluation of the four-year old child. The medical report in question appears in the record as follows:

NAME: [the four-year old child]

DATE OF EVALUATION: April 9, 1990

Seen briefly for pictures and for re-examination. On his last examination he had a lot of reflex spasm and it was hard for me to examine him or obtain pictures. Today he shows on picture, he shows a definite wedge-shaped scar at 1 o'clock. He has no history of constipation or pinworms or any other problems. This could be definitely post-sodomy. The scar is fairly striking. He does not have a reflex relaxation. Rectal exam is negative, sent for serology and AIDS testing. The child today says, again he tells me, "Mr. Reeder messed with my bottom but I cannot remember what he did."

Martha Sharpless, M. D./s
Medical Director

copy/Randolph County Sheriff Dept.

Attached to the medical report is an affidavit which appears in the record as follows:

I, Nancy Collins, do solemnly swear:

1. That I am the custodian of Medical Records of Developmental Associates.

2. That attached hereto are the medical records sought by the attached subpoena. These are the records of the examination and treatment of Steven Douglas Hinton at Developmental Associates on April 9, 1990.

3. That the attached records are true and correct copies of the above-described records.

4. That the attached records were made and kept in the regular course of business at Developmental Associates. The contents

STATE v. REEDER

[105 N:C. App. 343 (1992)]

thereof were recorded at or near the time of occurrence of the events observed. The records were made by. persons having personal knowledge of the matters contained therein.

This 5 day of December, 1990.

Nancy S. Collins/s
Director

In his brief, defendant states, "This report was hearsay. The [S]tate did not comply with the procedural requirements of Rule 803 in authenticating the document, and it should not have been admitted for this reason." Rule 803 of the North Carolina Rules of Evidence provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) Records of Regularly Conducted Activity — A memorandum, report, record, or data compilation . . . of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of or circumstances or preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

In *Sims v. Insurance Co.*, 257 N.C. 32, 125 S.E.2d 326 (1962), the Supreme Court applied the business records exception for hospital records and set forth the following requirements for their introduction:

In instances where hospital records are legally admissible in evidence, proper foundation must, of course, be laid for their introduction. The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition or event recorded, that they were made by persons having knowledge of the data set forth, and that

they were made *ante litem motam. The court should exclude from the jury consideration of matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay.*

*Id.* at 35, 125 S.E.2d 326 at 329 (emphasis added).

In the present case, assuming *arguendo* that the medical report in question was properly authenticated as a medical record "kept in the course of a regularly conducted business activity" and admissible as a business record within the purview of Rule 803(6), we must consider whether the report was otherwise "legally admissible" as provided in *Sims*. The report under consideration declares that the subject child told the declarant, Dr. Sharpless, "Mr. Reeder messed with my bottom but I cannot remember what he did." While this statement might have been admissible as corroborative testimony at trial, it is clearly inadmissible within the meaning of the business records exception to the hearsay rule because it is an "entr[y] which amount[s] to hearsay on hearsay." The State argues the statement should be admissible under the exception to the hearsay rule set out in Rule 803(4)—"Statements for Purposes of Medical Diagnosis or Treatment." The State's contention, however, is untenable since the report discloses that the exam was not made for the purpose of diagnosis or treatment, but solely for the purpose of determining whether the child had been sexually abused.

The relevance of the statements in the report that ". . . he shows a wedge-shaped scar at 1 o'clock. He has no history of constipation or pinworms or any other problems. This could be definitely post-sodomy" is seriously questionable since the doctor's exam occurred more than a year after the incident giving rise to the charge. The physician's statement was at most equivocal and was based in part on a history of the child's condition related to her by his parents. These statements, even if relevant, have no probative value and are clearly prejudicial. See N.C.R. Evid. 403. The statement in the report indicating that the child was "sent for serology and AIDS testing" is irrelevant and served only to unduly and unfairly prejudice defendant in the eyes of the jury as to the four-year old child, 90 CrS 63-64.

Therefore, we hold the trial judge erred to the defendant's prejudice in allowing the medical report made by Dr. Sharpless on 9 April 1990 to be admitted into evidence as an exception to

the hearsay rule pursuant to Rule 803(6) when the document contained "matters which were immaterial and irrelevant" and statements which "amounted to hearsay upon hearsay," and for this error, defendant must be given a new trial with respect to the charges against him involving the four-year old child. For this reason, we need not address defendant's remaining assignment of error argued on appeal which relates only to the four-year old child.

With respect to the charges against him concerning the three-year old child, defendant received a fair trial free from prejudicial error.

No error in 89 CRS 143; New trial in 90 CRS 63-64.

Judges WELLS and JOHNSON concur.