STATE OF NORTH CAROLINA v. STEVEN MURRAY GROVER, SR.

No. COA99-1447

(Filed 20 March 2001)

**Evidence— expert testimony—child sexual abuse**

The trial court erred in a prosecution for statutory rape and related offenses by admitting testimony from a clinical social worker and a pediatric nurse practitioner concluding that the victims had been sexually abused based solely on the children's statements to them or to someone else. It is permissible for an expert to testify that a child exhibits characteristics consistent with abused children, but impermissible for an expert to testify that a child has been sexually abused in the absence of physical evidence.

Judge WALKER dissenting.

Appeal by defendant from judgments entered 8 March 1999 by Judge James C. Spencer, Jr. in Granville County Superior Court. Heard in the Court of Appeals 6 November 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Celia Grasty Lata, for the State.*

*Thomas L. Currin for defendant-appellant.*

HUNTER, Judge.

Steven Murray Grover, Sr. ("defendant") appeals the jury's verdict convicting him of one count of statutory rape of a person thirteen, fourteen, or fifteen years old, nine counts of taking indecent liberties with a child, one count of incest between near relatives, and one count of felony child abuse by a sexual act. Due to the prejudicial error of the trial court's admittance of expert testimony that was neither based on a specialized knowledge or expertise nor assisted the jury in understanding or determining a fact in issue, we hold that defendant is entitled to a new trial.

Evidence presented at trial tended to show that defendant was married to his third wife, and had a child from each of his prior two marriages. Defendant's daughter (herein "M") was born on 26 March 1983; his son (herein "S") was born 29 August 1984. Apparently, defendant spent little time with the children during their formative years. However, when M was twelve and S was eleven, the two began spending weekends with defendant, and thereafter in the summer of 1996 defendant gained custody of S. Significantly, S "had a history of behavioral and psychological difficulties. He be[came] . . . a patient at the Children's Psychiatric Institute in Butner . . . in 1991. . . . [S] continued regular monthly psychiatric counseling with Dr. Paul Grant while in [defendant's] custody."

> During March 1997, [S] was disciplined by [defendant] with a belt for misbehavior at school. . . . [S] showed the bruises to his mother . . . who filed an action for a domestic violence protective order. . . . Pursuant to that order, effective for one year, [S's mother] was granted custody of [S] in May, 1997. . . .

In August 1997, M began living with defendant, his third wife, and S. In November 1997, M told S's mother that she and S had been sexually abused by defendant. After which, S's mother took both M and S to Granville County Social Services where both children were interviewed and given medical examinations "for signs of physical trauma to their genital and anal areas." Neither child's exams revealed any physical abuse or trauma, and M's hymen was found to be intact. Defendant denied all allegations against him but did not testify at trial.

At trial, S testified that he took showers with defendant; that defendant masturbated in front of him and M; that after defendant ejaculated, defendant told him and M to touch and taste the semen; that defendant would have him and M play hide and go seek while the three were naked, and; that once, defendant put Vaseline between S's legs and then closed the legs onto defendant's own penis, moving it back and forth until defendant ejaculated, and all this, while M watched. S further testified that defendant and he watched XXX rated movies depicting both heterosexual and homosexual intercourse and the use of rubber penises ("dildos"). Likewise, M testified that at night defendant would come into her bedroom (which she shared with S) and touch her on her breasts and vagina. She stated that defendant touched her with his hands and penis and that defendant masturbated in front of her. M further testified that defendant once attempted vaginal penetration with his penis but she yelled because it hurt and he got up. She stated that she was afraid of defendant because he had threatened to hurt her mother if M told anyone about his actions.

Defendant preserved twelve assignments of error but makes only seven arguments to this Court. Therefore, we deem any assignment not argued, abandoned. N.C.R. App. P. 28(a). Defendant's first assignment of error is that the trial court committed reversible error by admitting the expert witness testimony of Jeanne Arnts and Susie Rowe, both of whom opined that the children had been sexually abused, when there was no physical evidence of such abuse. We agree with defendant that the trial court did so err and thus, defendant is entitled to a new trial.

It has long been the law in North Carolina that:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C, Rule 702(a) (1999). Additionally, this Court has held that where "experts found no clinical evidence that would support a diagnosis of sexual abuse, their opinions that sexual abuse had occurred merely attested to the truthfulness of the child witness," and were inadmissible. *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 90, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997). Therefore, in order for the trial court to have properly admitted the expert testimony at issue,

[t]he State was required to lay a sufficient foundation to show that the opinion expressed by [the experts] was really based upon [their] special expertise, or stated differently, that [the experts] w[ere] in a better position than the jury to have an opinion on the subject. . . .

*State v. Trent*, 320 N.C. 610, 614, 359 S.E.2d 463, 465 (1987).

In the case at bar, on *voir dire* Ms. Arnts (the clinical social worker who twice interviewed S) stated, "[t]he conclusion was that I *confirmed* that [S] is a sexually abused child." (Emphasis added.) When asked what she based her conclusion on, Ms. Arnts stated, "[i]t was based upon [S]'s statements in the interviews, along with information—similar information that was corroborated by his sister." Following *voir dire* and over defendant's objection, the trial court then allowed Ms. Arnts to testify

[t]hat [my] conclusion was based upon [S]'s description of a number of sexualized activities and acts, which—in which he was engaged, and I believed that the fact that he had a sister who was des—also describing sexual abuse in the same home environment by the same person that [S] described, and corroborated some of what [S] said, which also corroborated [S]'s statements and provided further validation.

Finally, Ms. Arnts admitted that she filed her report even before S's physical examination results had returned for

two reason [sic], actually. One was that [S] did not describe anything to me which would cause medical findings—cause medical trauma to him, causing physical trauma to him. He did not describe penetrating trauma that we would expect them to see something on the medical exam to support what he said.

And then the other reason is just the fact that Social Services, you know, needs to get things done in a timely manner, and it was—[S] wasn't physically examined until January[,] [a month after the interviews were completed].

The record before us further reflects that later during the trial, Ms. Rowe (the pediatric nurse practitioner who conducted M's physical examination) also testified "[i]t was [her] conclusion that [M] was a sexually abused child." However, when confronted with questions of whether she found any physical evidence of abuse of M, Ms. Rowe was reluctant to admit that she found none. Regarding the anal exam, she testified:

STATE v. GROVER

[142 N.C. App. 411 (2001)]

Q. So, you saw no evidence of any abuse when you examined the anal area?

A. I saw no evidence of any trauma.

Q. Well, you saw no evidence of any abuse when you examined her, no trauma, no abuse. You saw no evidence of it.

. . .

Q. . . . —what evidence, if any, did you find—

A. (Interposing) The anal exam was normal.

Q. All right, so you didn't find any evidence of abuse—

. . .

A. Of trauma. I saw no evidence of trauma.

Q. Or any other kind of abuse.

[A]. The determination of whether the trauma is abuse is not necessarily what we determine . . . .

Q. . . . what I am asking you is this. It was a perfectly normal exam.

A. That is correct.

Q. With no findings and no evidence whatsoever, so why is it that you are unwilling to say that you didn't find any evidence of abuse when you examined the anus?

A. The exam was normal. The fact that there is no history of abuse is not relevant.

. . .

A. There is no trauma to the anus. You can have—you can have sexual abuse to the anus without trauma. So *there is no physical evidence of sexual abuse*, but that doesn't mean it didn't occur.

Q. Thank you, what you just told me is what I wanted you to say, that there is, in fact, no physical evidence of sexual abuse in the anal area, and that is correct, wasn't it?

A. Yes.

(Emphasis added.) As to M's vaginal exam, defense counsel again had to inquire of Ms. Rowe several times before she would straightforwardly answer as to whether she did, in fact, find any physical evidence of sexual abuse:

Q. And you did not—you looked using this [colpo]scope and everything else and you simply found no evidence of sexual abuse?

A. I found no evidence of trauma to the hymenal membrane.

Q. Did you find any other evidence of sex abuse in that area when you examined it?

A. The examination is normal.

Q. . . . so you found no evidence of trauma or of sex abuse in that examination, isn't that true, ma'am?

A. The examination is normal, has no evidence of trauma and a normal exam can be seen, whether there is sexual abuse or no[] sexual abuse.

. . .

Q. Now, your exam was also consistent with absolutely no sexual abuse having occurred at all, wasn't it?

A. The exam, physical exam is consistent with absolutely no sexual abuse, but we have a history that plays into this as well. The history is the primary focus of the findings.

Q. So, [M's] disclosures to you were the basis of any conclusions that you or the Center reached, and nothing that occurred in these physical examinations, isn't that a fact, ma'am?

A. My—excuse me, but the disclosures to me and the interviewer, not just to me.

Q. There is nothing in any of these physical exams that contributes one iota to any conclusion that you have stated that there was any sexual abuse of this child, isn't that true?

A. It is true only to the point that normal exams can be seen in children who have experienced child sexual abuse.

. . .

Q. . . . Isn't it true that any conclusions you reached are based on things other than these physical examinations, because the physical examinations are negative as to trauma and sexual abuse?

A. . . . *the diagnosis is made on the interview information.*

(Emphasis added.)

Defendant argues that without any physical evidence of abuse, and with no other basis for their testimonies, the expert witnesses' testimonies were inadmissible under Rule 702, being that "their opinions that sexual abuse had occurred merely attested to the truthfulness of the child . . . ." *State v. Dick*, 126 N.C. App. at 315, 485 S.E.2d at 90. Contrarily, the State argues that neither expert witness "gave an opinion as to the credibility of the children's in-court testimony or as to Defendant's guilt or innocence." To support its position, the State cites cases in which our Supreme Court held that it was not improper for an expert to testify to a victim's symptoms or physical examination being consistent with the victim's statements of abuse or credibility. *See State v. Aguallo*, 322 N.C. 818, 822, 370 S.E.2d 676, 678 (1988) (pediatrician's testimony that results of physical examination were consistent with victim's pre-examination statement was admissible as "vastly different" from improper comment on victim's truthfulness or credibility); and, *State v. Kennedy*, 320 N.C. 20, 31-32, 357 S.E.2d 359, 366 (1987) (no error to admit physician's opinion that victim's symptoms were consistent with sexual abuse). However, we are unconvinced by the State's argument.

Regarding Ms. Arnts' testimony, although the State contends that her opinion testimony concluding that S was sexually abused was not solely based upon S's disclosures to her, the evidence of record before this Court does not support the State's argument. It is true that Ms. Arnts not only interviewed S twice, but also reviewed S's responses to a fifty-four question "trauma symptom checklist" test administered to children who may exhibit anger, depression, disassociative symptoms, post-traumatic stress symptoms, or symptoms with sexual distress. Consequently, Ms. Arnts testified that S

had endorsed several of what we call, critical items. Items that . . . we may require some immediate intervention.

And—but in terms of the clinical scales for anxiety, or depression, or anger, or PTS, fear or dissociation, he was not in the clinical range for any of those.

. . .

Clinical range would be that we'd want to look much more closely at those particular symptoms that he's endorsing, get more information.

. . .

[However, Ms. Arnts further testified that S] had none in that range.

Nonetheless, Ms. Arnts still concluded that S had been sexually abused. We find Ms. Arnts' own testimony dispositive as to what she based her conclusion on: "[S]'s description of a number of sexualized activities and acts . . . corroborated" by his sister, M.

Further, we find the subject expert testimony analogous to that in *State v. Bates*, 140 N.C. App. 743, 538 S.E.2d 597 (2000). In *Bates*, this Court acknowledged that where an expert witness

conducted an interview and a physical examination of a child who claimed she had been abused[,] [and where] the physical examination revealed no evidence that the child had been sexually abused[,] [b]ut . . . the [experts] "diagnosed" the children as victims of sexual abuse based solely on the children's statements that they had been abused[, . . .] this opinion testimony lack[s] a proper foundation and should not . . . be[] admitted.

*Id.* at 748, 538 S.E.2d at 601. Furthermore, " '[o]ur appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence.' " *State v. Dick*, 126 N.C. App. at 315, 485 S.E.2d at 89 (quoting *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988)). Therefore, we hold that with no physical evidence of sexual abuse and with Ms. Arnts admitting that her conclusion was "based solely on the children's statements that they had been abused[,] [we agree with defendant that her] opinion testimony lacked a proper foundation and should not have been admitted." *Bates*, 140 N.C. App. at 748, 538 S.E.2d at 601. *See also State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987); and, *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705 (1993).

Likewise, the record clearly reflects that Ms. Rowe's expert opinion was solely based on the disclosures made to her by M—or disclosures made by M to someone else at the Center. Therefore, we hold that the State failed to demonstrate that "the opinion expressed by [Ms. Rowe] was really based upon h[er] special expertise, or . . . that [s]he was in a[ny] better position than the jury to have an opinion on the subject" as required for admittance pursuant to N.C. Gen. Stat. § 8C-1, Rule 702. *Trent*, 320 N.C. at 614, 359 S.E.2d at 465. Thus, the trial court erred in admitting her testimony as well. *Bates*, 140 N.C. App. at 748, 538 S.E.2d at 600-01.

Testimony that a child has been "sexually abused" based solely on interviews with the child are improper. *Dick*, 126 N.C. App. at 315, 485 S.E.2d at 89. However, we do not hold that an expert cannot testify as to characteristics of abused children. *State v. Aguallo*, 322 N.C. at 822, 370 S.E.2d at 678. "[E]xpert[s] in the field may testify on the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent with this profile." *State v. Hall*, 330 N.C. 808, 818, 412 S.E.2d 883, 888 (1992) (footnote omitted); *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359. The nature of the experts' jobs and the experience which they possess make them better qualified than the jury to form an opinion as to the characteristics of abused children. *Aguallo*, 322 N.C. at 821, 370 S.E.2d at 677. Thus, while it is impermissible for an expert, in the absence of physical evidence, to testify that a child has been sexually abused, it is permissible for an expert to testify that a child exhibits "characteristics [consistent with] abused children." *Id.*

The dissent opines that the cases cited by the majority are distinguishable from the case at bar and that instead, *State v. Reeder*, 105 N.C. App. 343, 413 S.E.2d 580 (1992) applies. We note at the outset that *Reeder* seems to be an anomaly within the case law. The overwhelming majority of cases have not supported the propositions set forth by the dissent. *See State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663 (2000); *State v. Bates*, 140 N.C. App. 743, 538 S.E.2d 597; *State v. Dick*, 126 N.C. App. 312, 485 S.E.2d 88; *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705 (1993); *but see State v. Youngs*, 141 N.C. App. 220, 540 S.E.2d 794 (2000). However, assuming *Reeder* is precedent in this case, its holding is inapposite.

The dissent, applying *Reeder* and arguing that "[e]ach of the cases cited [by the majority] involves a medical doctor who conducted a physical examination of the victim but did not find physical evidence

of the victim having been sexually abused," takes the position that both Ms. Arnts' and Ms. Rowe's testimonies were proper. We find Ms. Rowe's testimony identical to that of the cases cited—specifically in that as a pediatric nurse practitioner, Ms. Rowe conducted only a physical examination of M—nothing more, and found no physical evidence of abuse. Thus, even pursuant to the dissent's argument, Ms. Rowe has provided nothing upon which her testimony could properly be based.

However, the dissent argues that just as the two clinical psychologists in *Reeder* were allowed to testify, Ms. Arnts should likewise be allowed to testify. Applying the *Reeder* facts to the case at bar, we note that in *Reeder*, "Dr. Jackson[,] [a counseling psychologist,] testified that he had *observed behavorial characteristics in the child consistent with those of sexually abused children." Id.* at 350, 413 S.E.2d at 584 (emphasis added). We agree, and have noted above, that had Ms. Arnts testified that S's behavioral characteristics were consistent with those of sexually abused children, that testimony would have been proper. *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987). However, that was not her testimony.

The second expert in *Reeder* was Dr. Mills, also a clinical psychologist in the private practice of evaluating and treating sexually abused children in the normal course of her practice. After conducting five interviews over a two-month period, Dr. Mills testified that, based on *"her observations of the child's behavior, as well as her recollections of statements the child had made to her during the course of th[ose] interviews[,]* . . . it was her opinion that the four-year old child had been sexually abused." *Reeder*, 105 N.C. App. at 350, 413 S.E.2d at 584. This Court also held that testimony to be proper. Again, we agree that had Ms. Arnts testified likewise, her statement would have been admissible. However, Ms. Arnts clearly testified that although she administered the "trauma symptom checklist" to S, his responses did not fall in the range which would cause her Center "to look much more closely at those particular symptoms." Thus, Ms. Arnts' testimony, in fact, suggests that S's psychological testing was contrary to that of sexually abused children, yet the trial court allowed her to testify that S had been sexually abused. This was error.

Finally, it has long been the law in North Carolina that a defendant is entitled to a new trial if "there is a reasonable possibility that, had the error [at trial] not been committed, a different result would

have been reached . . . . N.C. Gen. Stat. § 15A-1443(a) (1999). Based on the record before this Court, and having found that both Ms. Arnts' and Ms. Rowe's testimonies were admitted in error, we also find that the opinion testimonies were prejudicial to defendant, bolstering the veracity of the children's testimonies of sexual abuse with nothing more to support the opinions. *See State v. Marine*, 135 N.C. App. 279, 281, 520 S.E.2d 65, 66 (1999). Thus, we hold that had Ms. Arnts' and Ms. Rowe's testimonies been excluded, "there is a reasonable possibility that the jury would have reached a different verdict." *Bates*, 140 N.C. App. at 747, 538 S.E.2d at 600. Therefore, defendant is entitled to a new trial.

Having so held, we need not address defendant's remaining assignments of error. However, we note that because all of the State's charges against defendant rest upon the alleged sexual abuse of defendant's two children, and because the inadmissible expert opinion lent credibility to the children's testimonies with no other supporting evidence, defendant is entitled to a new trial as to all charges.

New trial.

Chief Judge EAGLES concurs.

Judge WALKER dissents.

WALKER, Judge, dissenting.

I respectfully dissent from the majority's decision to award defendant a new trial on the basis of opinion testimony by the State's expert witnesses.

The testimony at issue is that of Jeanne Arnts, a clinical social worker, and Susie Rowe, a pediatric nurse practitioner. Ms. Arnts was qualified as an expert in the field of child sexual abuse. She was employed by Duke University Medical Center in the Center for Child and Family Health (the Center). She testified that she had worked with sexually abused children for sixteen years and had given dozens of lectures during that time span concerning recognizing and responding to child sexual abuse. She further testified that after interviewing S twice and performing psychological tests on him, she came to the conclusion that he had been sexually abused. Notably, she testified that she reached this conclusion with-

out waiting to learn the results of the physical tests because "there wasn't anything that [S] said—or that [S] described, which would leave physical findings."

Ms. Rowe, a pediatric nurse practitioner also with the Center, was qualified as an expert in the area of medical evaluation and diagnosis of child sexual abuse. She testified she had worked in the area of child abuse for more than ten years and had testified as an expert twenty-five to thirty times. She examined M and stated that there was an absence of physical evidence indicating abuse. When asked on direct examination what conclusions she had made as a result of her examination, Ms. Rowe testified that it was the conclusion of the Center that M was an abused child. Defendant did not object to this testimony but later objected when the Center's report outlining its conclusion was introduced. Ms. Ruth Lee, a child therapist at the Center, was involved in the evaluation of M and contributed to the report.

I agree with the majority that experts may testify as to their opinion if they possess "scientific, technical or other specialized knowledge" which will assist the jury to "understand the evidence or to determine a fact in issue." N.C.R. Evid. 702(a) (1999). However, this Court has held that, in the course of that testimony, experts may not testify as to the veracity of another witness. *State v. Dick*, 126 N.C. App. 312, 485 S.E.2d 88, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997). Thus, in order for experts to properly assert their belief as to a fact in issue, they must be "in a better position to have an opinion than the jury." *State v. Oliver*, 85 N.C. App. 1, 11, 354 S.E.2d 527, 533 (1987).

The majority interprets these rules to prohibit an expert from testifying that a victim has been sexually abused unless there is physical evidence to support such a conclusion. In support of this holding, the majority relies on a series of cases which hold that in the absence of physical evidence, a medical doctor's testimony that abuse has occurred is merely an affirmation of the victim's version of events and thus an impermissible opinion as to the victim's credibility. *State v. Bates*, 140 N.C. App. 743, 538 S.E.2d 597 (2000); *State v. Dick*, 126 N.C. App. 312, 485 S.E.2d 88 (1997); *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705 (1993); *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987). However, these are distinguishable from the case at bar. Each of the cases cited involves a medical doctor who conducted a physical examination of the victim but did not find physical evidence of the victim having been sexually abused. Thus, in the absence of physical

evidence of abuse, the medical doctor's ability to evaluate psychological or emotional symptoms is no greater than that of the jury. On that basis, our courts have excluded such testimony.

The case of *State v. Reeder*, 105 N.C. App. 343, 413 S.E.2d 580 (1992) supports the admissibility of Ms. Arnts' testimony. The defendant appealed his conviction of first-degree sexual offense and taking indecent liberties with a three-year-old child and a four-year-old child. The defendant contended that opinion testimony by two clinical psychologists that these children were sexually abused was merely an improper assertion as to the credibility of the children since no physical evidence of sexual abuse was admitted. Both children had been evaluated and treated by psychologists. This Court held a sufficient foundation was established to allow their expert opinions to be admitted into evidence. *Id.* at 350, 413 S.E.2d at 584.

Similarly in this case, the conclusion reached by Ms. Arnts and the Center was the result of psychological evaluations undertaken for the purposes of detecting characteristics of sexual abuse in the victim's demeanor, emotions and actions. The absence or existence of physical evidence of sexual abuse was not the basis for her conclusion. Thus, the fact that Ms. Arnts' conclusion may have corroborated the testimony of S does not make it inadmissible. Like the experts in *Reeder*, Ms. Arnts was in a better position than the jury to evaluate the facts and testimony as a result of her training and experience. The record reveals the trial court properly determined a sufficient foundation had been established to allow the evidence from Ms. Arnts, Ms. Rowe and the report of the Center.

Furthermore, assuming *arguendo* that the trial court erred in admitting the testimony of Ms. Arnts and Ms. Rowe, I do not believe such error was prejudicial. Defendant must show that a reasonable probability exists that, had such evidence been excluded, the jury would have reached a different conclusion. N.C. Gen. Stat. § 15A-1443(a) (1999). Even without the disputed testimony, the jury had sufficient evidence from which to conclude defendant committed the act of sexual abuse. Here, we have the testimony of M who was fourteen years old and S who was thirteen years old when they were seen by the experts at the Center. Their testimonies are consistent with their previous descriptions of the sexual abuse by defendant. Therefore, I find the trial court did not commit reversible error.