STATE OF NORTH CAROLINA
v.
DONALD MARENGO
No. COA08-1104
Court of Appeals of North Carolina
Filed August 18, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jill A. Bryan, for the State.
Castle Law Firm, by Paul Y. K. Castle, for defendant-appellant.
CALABRIA, Judge.
Donald Marengo ("defendant") appeals the trial court's judgment entered upon a jury verdict finding him guilty of taking indecent liberties with a child. We find no error.

I. Facts
S.A. is the victim in this case. S.A.'s mother ("Robin") was married to defendant's cousin when S.A. was born. In April 2001, Robin and S.A. moved to North Carolina to live with defendant. Robin gave birth to defendant's son ("Alex") in North Carolina. Defendant worked with Joe Hamilton ("Mr. Joe") and saw him on a daily basis at work. Robin became friends with Lisa Hamilton ("Lisa"), who was married to Mr. Joe. Robin occasionally brought S.A. and Alex to Mr. Joe and Lisa's home. Subsequently, Robin, S.A., and Alex moved out of defendant's house on 2 December 2002.
During September or October, 2003, S.A., then almost four years old, said the word "cock" to Robin, who was shocked by S.A.'s use of the word. S.A. told Robin she heard the word from Mr. Joe, and Mr. Joe had told her to put his cock in her mouth. Robin knew that Mr. Joe was Joe Hamilton, who was in the Marine Corps with defendant. The following day, Robin contacted defendant, who was no longer living with her, and told him what S.A. had said. Defendant told Robin he did not believe that Mr. Joe had done anything to S.A., but knew Mr. Joe had been arrested for molestation. Robin learned from Lisa that the charges against Mr. Joe included S.A. and two other little girls. Lisa also relayed to Robin that Mr. Joe had said that he did not do anything that defendant did not do. Robin was unaware that defendant had also molested S.A.
Michael Williams, investigator, Naval Criminal Investigative Service ("NCIS"), came to Robin's home to begin investigating defendant's alleged sexual abuse of S.A. Patti Lyons, special agent, NCIS, participated in the investigation. Shawn Dwyer, then a child protective service investigator with the Onslow County Department of Social Services, also participated in the investigation of the case.
Defendant was arrested and indicted for the following offenses, which were alleged to have occurred between 1 May 2002 and 30 December 2002: (1) first-degree sex offense; (2) sexual offense while residing with and having assumed the position of a parent; (3) committing a sexual act while acting as a child's guardian; (4) taking and attempting to take immoral, improper, and indecent liberties with a child; (5) committing a crime against nature; and (6) engaging in sexual contact (penis to buttocks) by force and against the will of S.A. for the purpose of sexual gratification.
Defendant was tried in Onslow County Superior Court in April 2007. At the time of trial, S.A. was seven years old and was a first grade student. The State presented testimony from several witnesses regarding S.A.'s abuse, including, inter alios, S.A. and Mr. Joe.
S.A. testified that she was touched in her private place, which was a "bad touch," by both defendant and Mr. Joe. S.A. also testified that Mr. Joe put his private in her private and in her mouth. In addition, S.A. testified defendant gave her a "bad touch" because he "put his private in my bumper" while S.A. was lying on the floor in her bedroom watching television. She explained that her bumper is the place where she goes to the bathroom. Further, S.A. testified that at the time of the incident, S.A.'s mother was at work and her brother was asleep.
At the time of defendant's trial, Mr. Joe resided at the United States Disciplinary Barracks in Fort Leavenworth, Kansas, where he was serving a twenty-five year sentence for molestation of three young girls. He was convicted of rape of a child under the age of twelve and forcible sodomy of two children under the age of twelve. He had not made any arrangement with the prosecutor in exchange for his testimony.
When Mr. Joe returned to the United States after being deployed to Iraq, he had difficulty eating and sleeping and experienced paranoia. He had difficulty controlling his anger and was often angry without provocation. He told a psychiatrist that he was having emotional problems around young girls and that he was getting agitated around them.
A month or so after he returned from Iraq, Robin brought S.A. and Alex to Mr. Joe's house; then Robin and Lisa took Alex with them but left S.A. with Mr. Joe while they picked up some pizza they had ordered. Mr. Joe called S.A. into the living room and sat with her for a few seconds. Mr. Joe got angry for no reason and pulled down his pants. S.A. then stepped in front of him and put her head down between his legs and started performing oral sex on him. He placed his right hand on the back of her head. He had not told S.A. what to do. He referred to his penis as his cock. Mr. Joe then "freaked out," told her to stop performing oral sex and to leave the room. He pulled up his pants, went into his bedroom for a few minutes, masturbated, came back out and sat on the couch. After a few minutes, he called S.A. back into the living room to apologize to her. Mr. Joe asked her if anybody else had ever done anything like that to her before. He recalled that S.A. was quiet for a few seconds and then said that "daddy had." He asked S.A. what daddy had done and she said that he put his cock in her mouth and in her butt. Mr. Joe assumed that she was referring to defendant since S.A. called defendant "Dad."
Upon defendant's motion to dismiss all charges made at the close of all the evidence, the trial court dismissed all charges except the charges of first-degree sex offense with a minor and indecent liberties with a child. The jury returned a verdict of guilty of one count of taking indecent liberties with a child, but was unable to reach a verdict on the first-degree sex offense charge.
Defendant stipulated to one aggravating factor  that he took advantage of a position of trust or confidence, including a domestic relationship, to commit the offense. Defendant was sentenced to a minimum of 20 months to a maximum of 24 months in the North Carolina Department of Correction. The trial court directed that upon defendant's release, he be required to comply with the sex offender registration act. Defendant appeals.

II. Expert Witness and Foundation
Defendant argues that the trial court abused its discretion by allowing Elizabeth Deaton ("Deaton") to testify that S.A.'s disclosures to her were consistent with the profiles and characteristics of a child who has been sexually abused when there was no physical evidence or other foundation in the record. We disagree.

A. Qualification of Expert Witness
Whether a witness has the requisite skill to be qualified as an expert is chiefly a question of fact, the determination of which is ordinarily within the exclusive province of the trial judge. State v. Bullard, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984) (internal citation omitted). "[A] finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it." State v. Parks, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989) (citation omitted).
In the instant case, Deaton was a pediatric nurse practitioner who specialized in child abuse and behavioral health issues in adolescents. Deaton testified in detail concerning her extensive specialized training and experience conducting medical assessments and forensic interviews of children suspected of being abused.
The State elicited testimony from Deaton that the victim's disclosures and actions matched the profiles of sexually abused children. Defendant objected and the trial court sustained his objection on the basis that there was not sufficient foundation for that testimony. The following exchange occurred between the trial judge and the State:
THE COURT: I don't think you've laid your foundation. I think if you expand on your foundation, she would probably do that. Her testimony was people she's seen. I don't consider that to be a factual foundation.
THE STATE: Yes, sir.
THE COURT: Has to go a little bit beyond that and she probably can, apparently, if you lay a foundation. I'm not going to just based on people I've seen.
THE STATE: Yes, sir. Yes, sir.
THE COURT: Okay. Bring them back in. I want to know the basis of the opinion.
THE STATE: Sir?
THE COURT: I want the basis of the opinion if she has one.
The prosecutor then made an offer of proof where the expert witness recited her credentials and training. Defendant contends because the expert witness recited the same credentials in the beginning of her testimony, she did not give any new information to warrant changing the judge's ruling.
Since the trial court requested the basis of her opinion, Deaton explained that her opinion was based on the interview with S.A., not on any physical examination. Deaton performed a physical examination of S.A. on 14 June 2005, approximately two-and-one-half years after the period of the alleged abuse. Deaton testified that she did not find any physical evidence of abuse, but that this is common in 85 to 90 percent of abuse victims.
When Deaton interviewed S.A. on 14 June 2005, she did so with the assistance of body diagrams and drawing pictures. During the interview, S.A. told Deaton substantially the same information regarding defendant and Mr. Joe's behavior towards her that she had previously told her mother, the investigator, and the trial court when she had testified at trial.
Deaton testified that her specialized training and education in identifying profiles and characteristics of abused children  how they behave, interact and disclose information  combined with her experience and examinations of children in her own practice helped her to form an opinion whether S.A.'s actions and disclosures fit the profiles or characteristics of a child who had been sexually abused. Deaton said that research indicates that a child's presenting history and disclosures are the most important sources in evaluating the likelihood that abuse had occurred. She also added that S.A.'s disclosures had been consistent and that the events S.A. was able to describe went beyond what most children her age would be able to conceptualize without having experienced them. As an example, Deaton offered S.A.'s description of the oral sex act as being like a toothbrush going in and out of her mouth. Deaton opined that her observations of S.A.'s behavior and disclosures during her medical and forensic examinations fit the profile or characteristics of a child who has been sexually abused.

B. Foundation
Defendant relies on case law which states where there is no physical evidence of abuse, testimony by an expert witness that a victim was in fact sexually abused is inadmissible because without the physical evidence, the expert witness lacks the proper foundation for such testimony. State v. Grover, 142 N.C. App. 411, 418, 543 S.E.2d 179, 183 (2001) (holding that with no physical evidence of sexual abuse and with the expert witness admitting her conclusion was based solely on the children's statements that they had been abused, her opinion lacked the proper foundation and should not have been admitted). However, it is not inadmissible for the expert witness to testify a victim matches the same characteristics and profile as sexually abused children after the witness establishes he or she has the requisite training to make such a statement. Grover, 142 N.C. App. at 419, 543 S.E.2d at 184 ("we do not hold that an expert cannot testify as to characteristics of abused children"); State v. Stancil, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002) (expert witness may testify, upon proper foundation, as to profiles of sexually abused children and whether a particular victim has symptoms or characteristics consistent therewith).
In the instant case, the trial court properly determined that Deaton qualified as an expert. Deaton did not testify that S.A. was in fact sexually abused. She only testified that S.A. fit the profile of an abused child. The trial court did not abuse its discretion in allowing this testimony. This assignment of error is overruled.

III. Testimony of Mr. Joe
Defendant argues the trial court erred when it allowed Mr. Joe to testify about how he sexually molested S.A. because Mr. Joe's testimony was not relevant and its probative value was outweighed by the danger of unfair prejudice. We disagree.
Defendant did not object to this testimony at trial, and we therefore review the alleged error under the plain error standard. Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912, 108 S. Ct. 1598 (1988).
Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue . . ." State v. Sloan, 316 N.C. 714, 724, 343 S.E.2d 527, 533 (1986) (citations omitted). "[I]n a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." State v. Collins, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994) (citations omitted). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." State v. Coffey, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990).
In the instant case, Mr. Joe's testimony proved a fact at issue. When he pulled down his pants to have S.A. perform oral sex on him, he did not have to tell her what to do. S.A. stepped in front of him, put her head down between his legs, and performed oral sex on him. When Mr. Joe asked S. A. if anyone had ever done that to her before, she was quiet for a few seconds and then said her daddy had. She told him her daddy had put his cock in her mouth and in her butt.
Mr. Joe's testimony was relevant to corroborate S.A.'s testimony that she had been sexually abused by both defendant and Mr. Joe. In addition, his testimony was necessary to refute the assertions of defendant that S.A. was lying about being abused. Mr. Joe's testimony was probative of important aspects of the State's case, and the value of this testimony to the State's case outweighed any prejudicial effect on defendant. This assignment of error is overruled.

IV. Victim's Out-of-Court Statements
Defendant argues that the trial court erred by admitting the testimony by Mr. Joe regarding S.A.'s out-of-court statements. We disagree. Defendant did not object to these statements at trial and so we review them under the plain error standard.
Defendant argues that S.A.'s statements were inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Although hearsay is inadmissible except as provided by statute or the Rules of Evidence, N.C. Gen. Stat. § 8C-1, Rule 802 (2007), an exception to this general rule allows admission of a prior consistent statement. State v. Lee, 348 N.C. 474, 484, 501 S.E.2d 334, 341 (1998). A trial court has "wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes." State v. Call, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998).
Mr. Joe's statements regarding S.A.'s out-of-court statements were prior consistent statements that could be admitted for corroborative, nonhearsay purposes. Since Mr. Joe's statements comprised permissible corroborative testimony, the admission of these statements was not error. This assignment of error is overruled.

V. Sufficiency of Evidence
Defendant argues that the State failed to present substantial evidence of each essential element of the charge of indecent liberties with a child, and thus the trial court erred in denying defendant's motion to dismiss at the close of the evidence. We disagree. Defendant presents this assignment of error to this Court "without argument." The State presented substantial evidence of all the elements of the offense of taking indecent liberties with a child, and the trial court properly entered judgment based on the jury verdict.
No error.
Chief Judge MARTIN and Judge STEELMAN concur.
Report per Rule 30(e).